## In re Samuel Davies.

1. The power of a court to admit as an attorney to its bar a person possessing the requisite qualifications, and to remove him therefrom when found unworthy, has always been recognised and cannot be questioned. The power of removal for just cause is as necessary as that of admission for a due administration of law.

2. By admitting an attorney to the bar, the court presents him to the public as worthy of its confidence in all his professional duties and relations, and if afterwards it comes to the knowledge of the court that he has become unworthy it is its duty to withdraw that endorsement, and thereby cease to hold him out to the public as worthy of professional employment.

3. A client made an affidavit before a magistrate charging an attorney with the embezzlement of a bond, and he was arrested and required to give bail for his appearance at court. The client also made the same charge under oath before the Board of Censors of the Law Association. Subsequently a settlement was made between the client and the attorney, by which the latter paid the former the value of the bond, and the client consented to the entering of a nolle prosequi in the criminal prosecution and a release of all claims. It was contended that this settlement operated as an absolution and remission of the offence. *Held,* that it did not; that the exercise of the power of the court was not for the purpose of enforcing civil remedies between parties, but to protect the court and the public against an attorney guilty of unworthy practices in his profession.

February 2d 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county :* Of January Term 1880, No. 61.

In the court below this was a rule to show cause why Samuel Davies, a member of the bar, should not be stricken from the list of attorneys. The facts as disclosed by the testimony and exhibits and as stated by the court below were as follows :

Some time in the month of March 1878, the respondent obtained a bond from the Guarantee Trust Company for Cornelia Curtiss, who had employed him professionally for that purpose. It should have been delivered to her forthwith, but instead of performing his duty in this regard Davies pledged the bond to one Humphreys as a security for money lent, and when Mrs. Curtiss and her son-in-law, John N. Spencer, called for the bond, they were put off with evasive promises. Davies did not state what he had done with that instrument, but said on each occasion that it should be forthcoming at the next. A correspondence ensued with Spencer, in the course of which Davies made various promises that were not kept, and he then gave Mrs. Curtiss a written assurance on the 1st of April that if he did not return the bond " on or before Saturday," he would pay her what it was worth. This note was followed on the 6th of the same month, by another, in which he promised to call on Monday or Tuesday evening " without fail," and bring the bond. This promise having been broken like the rest, Mrs. Curtiss made an affidavit before Magistrate List, on the 18th of

[In re Samuel Davies.]

April, in which she charged Davies with the embezzlement of the bond, and a warrant was issued for his arrest, which took place on the 11th of May, when he was held to bail to appear at the ensuing term of the Court of Quarter Sessions. Mrs. Curtiss had in the meantime made a similar charge under oath before the Board of Censors of the Law Association, and Mr. E. Spencer Miller at their instance obtained a rule on Davies to show cause why his name should not be stricken from the list of attorneys. Before this rule was taken, but after the application to the Board of Censors and his arrest, Davies called on Mrs. Curtiss and induced her to agree to settle the case and discontinue proceedings against him in consideration of the payment of $100, and she subsequently, at his request, made oath to a statement that she was entirely satisfied with the settlement; that the rule was obtained without her knowledge, and that she would willingly have lent the bond to him if he had asked for it.

Witnesses having been examined on either side before a Commissioner, the cause was argued before Hare, P. J., and Mitchell and Fell, JJ., on behalf of the Board of Censors and for the respondent, and the court made the rule absolute. Hare, P. J., after stating the facts above set forth, delivered the following opinion:

" Two grounds were principally relied on for the defence, one that the public had no further concern in a matter which had been settled between the attorney and client; the other, that Mrs. Curtiss had authorized the respondent to pledge the bond. If the latter point were established by the evidence, it would be a sufficient answer to the rule; but it is, unfortunately, at variance with all the testimony in the cause except that given by Davies in his own behalf. Mrs. Curtiss, indeed, says, that when Davies asked her consent to a settlement, she told him that she would have lent him the bond if he had requested it, but this was said reproachfully, and implied that he had not obtained her leave. Still we might have given the respondent the benefit of the doubt, were it not inconceivable that he should have listened to the reproaches that were heaped on him for the detention of the instrument, without mentioning a point so vital to his defence, and that he should have made no allusion to it in his correspondence with John N. Spencer and Mrs. Curtiss, or at the hearing before Magistrate List. Nothing could have been easier or more conclusive than to have said that Mrs. Curtiss had lent him the bond, that he had used it in the only way in which it could be made available, and that she must wait until he could find means to satisfy his creditor and redeem the pledge. Such an answer might not have been altogether satisfactory as between attorney and client, but it would have been a refutation of the criminal charge which was hanging over him.

" The remaining inquiry, did the settlement with Mrs. Curtiss

[In re Samuel Davies.]

purge the offence? admits of but one reply. When the property of a client is misappropriated, and she is compelled to set the civil and criminal law in motion as a means of redress, a wound is inflicted on the reputation of the bar that can only be healed by the removal of the guilty party from an office which he has shown himself unworthy to fill. The practice of the law requires that confidence should be reposed by the client and sacredly accepted as a trust by the attorney; and the observance of this obligation is so essential to the dignity and usefulness of the profession, that a judge should not hesitate to enforce the duty, or to visit a breach of it with the appropriate penalty. The rule was not taken by Mrs. Curtiss, but on behalf of a body whose task it is to vindicate the honor and maintain the purity of the bar, and we are not at liberty to withhold the judgment which they demand. We arrived at this conclusion with much regret, some weeks since, and a careful reconsideration of the evidence has satisfied us that no other sentence can be pronounced consistently with the requirements of the law, and the protection due to the community at large. The rule is made absolute, and the prothonotary is directed to transmit a copy of it, and of the judgment of the court, to the other Courts of Common Pleas, to the Orphans' Court, and to the Court of Quarter Sessions.                    Rule absolute."

The respondent then took this writ, alleging that the court erred in making the rule absolute.

*William H. Ruddiman* and *F. Carroll Brewster*, for plaintiff·in error.—There was no case, and there existed no professional relations or duty on the part of the plaintiff in error, in Court of Common Pleas, No. 2, which gave that tribunal occasion or authority for the exercise of this power. The case and the relations and duty were in Common Pleas, No. 4. That was the proper forum where the amount due was demandable and the misconduct regularly punishable. The action of Common Pleas, No. 2, was clearly *coram non judice*. By article 5, sect. 6, of the constitution it is provided that in the county of Philadelphia all jurisdiction and power shall be vested in four distinct and separate courts, and "the said courts in Philadelphia shall be designated respectively as the Court of Common Pleas number· one, number two, number three, and number four * * * and the several courts shall distribute and apportion the business among· them in such manner as shall be provided by rules of court, and each court to which any suit shall be thus assigned shall have exclusive jurisdiction of all proceedings at law and in equity, commenced therein, subject to change of venue as may be provided by law." Courts of Common Pleas, Nos. 2 and 4, are thus made distinct and separate, and any suit in one, in all its processes, conditions, liabilities, and results,

[In re Samuel Davies.]

is within the exclusive jurisdiction of that one. If answerable anywhere, Davies was answerable in Common Pleas, No. 4. His præcipe was lodged there, his appearance recorded there, his duties were consequent upon them there, and that was the forum for any order or rule upon him concerning the business in that court. "Exclusive jurisdiction" was in " number four," and there it must have inception and completion. In thus attaching to itself jurisdiction in the premises, and proceeding independently by rule and adjudication, the court below violated the requirements of the constitution, and their judgment is void, and of no effect. The plaintiff in error has not had his day in court—a court distinct and exclusive.

Neither Mr. Spencer nor Mrs. Curtiss were parties asking for the rule on Davies. There is, therefore, no complaining or responsible party in court or upon record moving for such action. On the 28th of May 1878, Davies paid Mrs. Curtiss $100, which she acknowledged was in full satisfaction of her claim. After such acknowledgment there was no basis for a proceeding, and it was too late for the grave and summary process of a rule. The evidence was that Davies had permission to use the bond. The case must be flagrant and the facts clear of doubt to call for action so severe as to strike respondent's name from the list of attorneys. It is submitted that in the absence of positive evidence of any dishonest intent, or of persistence in wrong-doing, the court is not justified in resorting to a measure so extreme as to deprive the respondent of the valuable right which pertains to his office of attorney.

*R. L. Ashhurst* and *Samuel Dickson*, for Censors of Law Association.—The contention that this matter was under the sole cognisance of Court of Common Pleas, No. 4, and that no other court could take cognisance of the matter is completely answered by the undisputed facts. This bond was not obtained by Mr. Davies in any legal proceeding whatever. There was never any legal proceeding from anything that appears relating to it. It was deposited with the Guarantee Company by Mrs. Curtiss as security for rent of premises occupied by her son-in-law, Spencer. This was a transaction *in pais*, and no part of a court proceeding. The plaintiff in error, who had been her attorney in other matters, Mrs. Curtiss employed to get the bond back. This he accomplished by negotiation. No rule could be taken in the case in No. 4. In that case Davies had not been guilty of any misconduct. The Censors were right in taking it as an independent new proceeding in the first court they could. Had it not been for the delay in endeavoring to give Mr. Davies a hearing before proceeding against him, the case would have gone to No. 1, in the ordinary course. Even if this was not so, can it be argued that the courts are bound

[In re Samuel Davies.]

to shut their eyes to misconduct by their attorneys unless committed in their courts in pending cases? Mrs. Curtiss distinctly authorized the commencement of the proceedings, and never recalled or revoked her authority prior to the granting of the rule. But apart from any authority from her, the courts have ample power on their own motion to purge the list of attorneys of improper persons, and can act whenever the matter is brought to their attention in a proper manner. And can it be questioned that the Board of Censors of the Law Association is competent as the representatives of the general body of the bar, to bring such matters to the attention of the court, and ask their action?

The rule was not to compel Davies to pay over money but to disbar him for misconduct as an attorney-at-law. The only defence having the appearance of merit is the allegation that Davies had received the permission of Mrs. Curtiss to use the bond. Unfortunately this is not made out by the evidence, and, as shown by the learned judge below in his opinion, it is contradicted by the whole weight and tenor of that evidence; in fact it rests upon the unsupported assertions of Mr. Davies himself in his testimony. It is inconceivable that one who had been permitted to have the use of the bond would have written a series of communications filled with pitiful evasions and excuses for its non-return. And still more amazing that he would have quietly submitted to arrest and allowed the case to be returned to a criminal court for trial when he had a ready defence.

Mr. Justice Mercur delivered the opinion of the court, May 3d 1880.

An attorney-at-law sustains an important relation in the administration of justice. He possesses certain powers and privileges from which others are excluded, and assumes important duties and obligations towards both court and client. He is an officer of the former, and a representative of the latter. His position is so responsible, his opportunities for good and for evil are so many that both statute and common law have united in throwing all reasonable safeguards around his conduct. Before he can be admitted to the bar, the Act of Assembly requires him to take an oath or affirmation, inter alia, that he will behave himself in the office of attorney within the court, according to the best of his learning and ability, "and with all good fidelity as well to the court as to the client." The court also requires satisfactory evidence of proper knowledge of the law, and of the good moral character of the applicant.

The power of a court to admit as an attorney to its bar, a person possessing the requisite qualifications, and to remove him therefrom when found unworthy, has been recognised for ages and cannot now be questioned. In fact the power of removal for just cause is as necessary as that of admission for a due administration

of law. By admitting him the court presents him to the public as worthy of its confidence in all his professional duties and relations. If afterwards it comes to the knowledge of the court that he has become unworthy it is its duty to withdraw that endorsement, and thereby cease to hold him out to the public as worthy of professional employment. The Act of 11th April 1834, recognises this right and duty as existing in the court. The 74th section thereof declares "if any such attorney shall retain money belonging to his client, after demand made by the client for payment thereof, it shall be the duty of the court to cause the name of such attorney to be stricken from the record of the attorneys, and to prevent him from prosecuting longer in the said court." The specific cause named in this act, which makes the action of the court mandatory, has often been held to be such misconduct as to justify a court in suspending an attorney from practice or in striking his name from the rolls: People v. Smith, 3 Caines 221; Same v. Wilson, 5 Johns. 368; Bohanan v. Peterson, 9 Wend. 503; Hyman v. Washington, 2 McCord 493; Ex parte Ferguson, 6 Cow. 596. None should be permitted to act who are guilty of unworthy practices or behavior in their profession: Leigh's case, 1 Munford 481. Such character renders him unfit and unsafe to be intrusted with the powers of his profession: John Percy, 36 N. Y. 651. The offence need not be such as to subject the attorney to indictment. If it shows such a lack of professional honesty as to make him unworthy of public confidence it is sufficient cause for striking his name from the roll: Baker v. Commonwealth, 10 Bush 592. This is a power inherent in every court when a person is shown to be unfit to practice in it: The People v. Turner, 1 Cal. 143; Mills, 1 Mich. Rep. 394; Bradley v. Fisher, 13 Wall. 335; Ex parte Robinson, 19 Id. 505; Austin et al., 5 Rawle 191; Dickens's Case, 17 P. F. Smith 169. Such an order is a judicial act to be done in the exercise of judicial discretion. It must, therefore, be governed by a sound judicial discretion guarding and protecting the just rights and independence of the bar, the dignity and authority of the court, and the safety and protection of the public: Ex parte Secombe, 19 Howard 9. A member of the bar has a property in his profession: O'Hara v. Stack, 9 Norris 477. He cannot be deprived of his right therein without due notice of the complaint, and an opportunity to be heard. In the present case there was a full hearing. The evidence clearly established and the court found that the plaintiff in error was professionally employed by Mrs. Curtiss to procure for her a bond of $100 from the Guarantee Trust Company; that he obtained it, and instead of delivering it to her, he pledged it to one Humphreys as security for money borrowed of the latter. The bond was frequently demanded of the plaintiff in error; but he put off Mrs. Curtiss with evasive promises to deliver it, followed by a promise to pay its

[In re Samuel Davies.]

value at a day specified if he failed to return it.  Having disre-
garded all his promises, Mrs. Curtiss at length made an affidavit
before a magistrate charging Davies with the embezzlement of the
bond.    He was arrested, and after a hearing required to give bail
for his appearance at the next Court of Quarter Sessions.    After
this, and after application to the Board of Censors of the Law As-
sociation, a settlement was made between Mrs. Curtiss and Davies
by which he paid her $100 as the value of the bond, and she con-
sented to the entry of a nolle prosequi in the criminal prosecution
and a release of all claims.    It is contended on the part of the
plaintiff in error that this settlement operated as an absolution and
remission of his offence.    This view of the case ignores the fact
that the exercise of the power is not for the purpose of enforcing
civil remedies between parties, but to protect the court and the
public against an attorney guilty of unworthy practices in his pro-
fession.    He had acted in clear disregard of his duty as an attorney
at the bar, and without "good fidelity" to his client.    The public
had rights which Mrs. Curtiss could not thus settle or destroy.
The unworthy act had been fully consummated.    In the exercise
of its sound discretion, the court held the misconduct was such as
to require that his name be stricken from the roll.    This action,
however, is not always understood to be a perpetual disability.    In
some instances the court have permitted an attorney to be restored
considering the punishment in the light of a suspension: 1 Tidd's
Prac., 89, and cases there cited.

We see no merit in the first assignment.    This bond was pro-
cured without the aid of process issuing out of any one of the
courts.

The position of a member of the bar is one of great responsibility.
Good faith and integrity in his professional employments are essen-
tially necessary.    It is the duty of a court to see the proper standing
is preserved.    Whenever its right to strike a member from its roll
appears to be impartially considered, and prudently exercised as
here, we are not willing to reverse its conclusion.

Judgment affirmed.