## IN RE ERNEST H. O'BRIEN.

### May Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 3, 1921.

*Disbarment Proceedings—Acts Constituting Malpractice—Hearing of Disbarment Before Trial on Information not Abuse of Discretion—Denial of Continuance Because Witnesses Charged with Crime Would Claim Privilege—Proof of Physical Disability Necessary for Continuance—Acquittal of Confederate not Evidence in Disbarment Proceedings—Nolle Prosequi of Criminal Charge not a Defence to Disbarment for Same Act—Disbarred Attorney Who Offered no Evidence not Entitled to Reinstatement on Newly Discovered Evidence.*

1. If an attorney, by any act of commission or omission, deceives the court so that he obstructs or pollutes the administration of justice, or by the suppression of truth obtains a result not warranted in law, he is guilty of malpractice and renders himself unworthy of the privileges which his license to practice law confers upon him.

2. An order by the Court for an investigation of charges preferred against an attorney on proceedings for his disbarment, before his trial on an information charging the same acts as a crime, was not an abuse of the Court's discretion, where the charges were preferred by the highest prosecuting officer of the State and involved attempts to obstruct the due administration of justice by perpetrating a fraud upon the court.

3. The denial, by commissioners to hear disbarment proceedings, of a continuance because witnesses for the respondent were charged with some criminal offence and would claim their privilege of refusing to testify, was not erroneous, where the commissioners reserved their ruling upon the effect of the claim of privilege by the witnesses until such claim should be made, and the witnesses were not subpœnaed by the respondent to appear at the hearing.

4. The commissioners did not err in denying a continuance because of the physical inability of the respondent to attend the hearing, until proof of such inability was presented beyond the mere statement of his counsel.

5. Where a respondent in disbarment proceedings is charged with having conspired with another to procure a certain court to find and establish a forged document to be genuine, and with having committed perjury as to the genuineness of such document, the acquittal of such other person of having committed perjury as to the genuineness of such document is not proper evidence in the disbarment proceedings.

6. The entry of a *nolle prosequi* in a criminal prosecution of an attorney does not constitute a defence to disbarment proceedings against him based on the commission of the crime.

7. An attorney who failed to participate or offer any evidence in disbarment proceedings resulting in his disbarment is not entitled to reinstatement as an attorney on the ground of newly discovered evidence.

PETITION to the Supreme Court by Ernest H. O'Brien asking leave to file a petition to be reinstated as an attorney at law and solicitor in chancery.

*Charles H. Darling* for the petitioner.

*Frank C. Archibald,* Attorney General, for the State.

STATEMENT BY WATSON, C. J.  At the February Term, 1919, of the Supreme Court, on charges preferred by the Attorney General of the State, supported by facts found and reported by commissioners appointed to hear evidence and make report of their findings in the premises, Ernest H. O'Brien of Rutland was removed from the office of attorney at law and from the office of

solicitor in chancery. The case is reported in 93 Vt. 194, 107 Atl. 487. Referring to those proceedings, O'Brien now presents his petition and asks leave to file the same, praying to be reinstated as an attorney at law and as solicitor in chancery. In view of the grounds of the petition, it becomes necessary to any disposition which may be made of the matter, to notice carefully and with more or less detail the charges preferred on which the disbarment proceedings were had, the course of the proceedings, and the facts found and reported by the commissioners. At the time the complaint in those proceedings was filed, there had been filed in the Rutland County Court, and was there pending, an information against O'Brien, charging him with the crime of perjury, being in part at least the same perjury alleged in the aforesaid complaint as committed by him for the purpose of deceiving and defrauding the court of chancery, presently more fully noticed.

It was alleged in the original complaint that on the 8th day of October, 1917, in the court of chancery in Rutland County, before Honorable Frank L. Fish, chancellor, the cause of *George P. Eastman and P. W. Clement* v. *Vermont Marble Company* was on trial, which cause was a bill in the nature of a bill of review brought for the purpose of reviewing the judgment of the Supreme Court in the cause of *Vermont Marble Company* v. *George P. Eastman et al.*, 91 Vt. 425, 101 Atl. 151; that the question at issue in the trial before the chancellor was whether a certain alleged written agreement (known in these proceedings as Exhibit No. 1) produced by the plaintiffs in said cause and purporting to have been executed on July 18, 1892, was a genuine document and whether the plaintiffs had knowledge of the same before May 6, 1917; that the petition in the last-named cause was based on this alleged written agreement, which written agreement the defendant therein alleged to be spurious and forged; that the time when this alleged written agreement came to the knowledge of the plaintiffs or their attorneys, was a material and vital question, it being of the essence of the plaintiffs' case to show that said alleged written agreement was newly discovered, and that neither the plaintiffs nor their attorneys had knowledge of it in time to make use of it in the cause of *Vermont Marble Company* v. *George P. Eastman et al.*, mentioned above; that in the said trial before Chancellor Fish, Ernest H. O'Brien of Rutland, an attorney at law of this Court, appeared as a wit-

ness for and on behalf of Eastman and Clement, plaintiffs, and as such witness was duly sworn; that it then and there became a material inquiry upon the trial of said issue whether the alleged written document was in the hands, or came to the knowledge, of the plaintiffs or their solicitors, prior to the 6th day of May, 1917; and the said O'Brien, after being duly sworn as aforesaid, wickedly contriving and intending to cause the court to believe that neither the plaintiffs nor their solicitors had any knowledge or information concerning the existence of said alleged written instrument prior to the day last named, and that the same was an ancient and genuine document, did then and there knowingly, falsely, corruptly, wilfully, and wickedly say, propose, and give in evidence before said court, in substance and effect, that he found the alleged written instrument in the office in which he practiced in Rutland, it being the same office occupied by Joel C. Baker in his lifetime and down to the time of his death in 1904, and since then by himself, and that the alleged written agreement was found by him in the old files of said Baker which had remained in that office from the time of the latter's death; that he (O'Brien) found the paper and the file of papers in which it was, either four or five years prior to the years 1917-1918, after which discovery it was kept in his safe until one Sunday in May, 1917, when his attention was called to the paper by reading in one of the local papers a decision of the Supreme Court of the Eastman-Vermont Marble Company Case, also that Mr. Lawrence had made some motion before the Supreme Court in reference to that case; that he (O'Brien) then took occasion to look at the papers again in which he had found the alleged written agreement, and that later he delivered them to Walter S. Fenton, one of the attorneys of the plaintiffs in the case then on trial before Chancellor Fish; that after the finding of said paper until this Sunday in May, he did not tell Eastman or Clement, or any of their attorneys anything about the paper, and never told any one about it until the day when he turned it over to Mr. Fenton upon that Sunday; that on a certain occasion when he (O'Brien) went to Albany, New York, on May 5, 1917, he did not see George P. Eastman; that the last time before May 6, 1917, he saw Eastman to have conversation with him was when he (O'Brien) brought suit against several parties in West Rutland in which Eastman was interested, it being a year or two prior to May 6, 1917; that when he was in Albany

on May 5, 1917, he met a man by the name of Steikel at the Stanwix Hall Hotel and conferred with him about two hours, and that he (O'Brien) hired and paid for the room he stayed in; that he did not say to Attorney Frank C. Archibald that the Vermont Marble Company had done what it could to injure him (O'Brien) and that he was going to get even with it; that he did not tell Archibald that he (O'Brien) had a case for damages at one time pending against that company which it settled out from under him and because it had done so he felt unfriendly toward it and made up his mind when the chance came he would get even with it.

Regarding the aforementioned matters and things testified to by O'Brien before Chancellor Fish on the occasion and in the trial alleged, charges are made in the original complaint that in truth and in fact the alleged written agreement and the file of papers in which it was, were not found by O'Brien either four or five years before 1917-1918; in like manner that the alleged written agreement had not been kept in the safe of O'Brien after its discovery as aforesaid until one Sunday in May, 1917; in like manner that the attention of O'Brien was not called to the alleged written agreement on one Sunday in May, 1917, by reading in one of the local papers a decision of the Supreme Court in the Eastman-Vermont Marble Company Case, and also that Mr. Lawrence had made some motion before that Court with reference to that case; in like manner that O'Brien did not at that time take occasion to look at the paper again; in like manner that it was not true that after the finding of said paper until the Sunday mentioned he did not tell Eastman or Clement anything about said paper, nor was it true in fact that he never told any one about it until he turned it over to Fenton on that Sunday, and in fact the alleged written agreement was not found in the files of the late Joel Baker as testified to by O'Brien; but that in fact said alleged written agreement was a modern and forged production, and was not the ancient document which it purported to be;—all of which was well known to O'Brien; and also that in fact the latter did see Eastman when he (O'Brien) was in Albany on May 5, 1917, and in fact the last time before May 6, 1917, O'Brien saw Eastman to have conversation with him was not the time when he (O'Brien) brought suit against some parties at West Rutland, in which Eastman was interested, about a year or two prior

to May 6, 1917, but was on May 5, 1917, at Albany, New York, and O'Brien had other conversations with Eastman after their said meeting at West Rutland on the occasion mentioned, and before May 6, 1917; and in fact O'Brien did not meet a man named Steikel when in Albany on May 5, 1917, at the Stanwix Hall Hotel, and on that day O'Brien did not hire and pay for the room he stayed in at that hotel; and in fact the latter did say to Archibald that the Vermont Marble Company had done what it could to injure him (O'Brien) and that he would get even with it, that he had a case for damages at one time pending against the company which it settled out from under him, and because of this he felt unfriendly toward the company and had made up his mind when the chance came he would get even with it.

The complaint contained another count charging that O'Brien and Eastman did also unlawfully conspire, combine, confederate, and agree together to deceive the said courts of this State by representing the alleged written agreement, which they well knew to be forged, to be newly discovered evidence, and to be a genuine agreement, and falsely to establish it as genuine and newly discovered evidence in proceedings in the courts of this State, and to give and procure to be given false evidence in furtherance thereof;—following this by allegations showing, as before, the cause pending in which such false evidence was given, the issue on trial before Chancellor Fish, the evidence alleged to have been falsely given by both Eastman and O'Brien in furtherance of said conspiracy and with intent to defraud and deceive said courts, and that O'Brien by indirect means, ways, and methods, sought to perfect and to put into effect by such wicked conspiracy, combination, confederacy, and agreement, and to procure the said court of chancery to find and establish, said instrument to be genuine and newly discovered evidence, and thereby to defeat, reverse, and nullify said decision and decretal order of said court of chancery against Eastman and Clement, and said decision and mandate of the Supreme Court of Vermont.

The complaint contained another count alleging that on, to wit, the 9th day of November, 1916, a claim was presented to the commissioners upon the estate of Josephine B. Holmes, in favor of one Bert H. Stickney, and that from a disallowance of the same an appeal was taken to the county court within and for the county of Rutland, in which court the general issue

was pleaded and trial had by jury, O'Brien appearing as counsel of record for Stickney; that at the trial O'Brien permitted a certain book of account and certain pages thereof to be introduced in evidence in behalf of his client, Stickney, as a true and genuine book account against the said Josephine B. Holmes during her lifetime, purporting to have been kept by Stickney in the due and regular course of business and contemporaneously with the rendition of the services therein charged; that this book account was introduced in evidence with the intent to have the court receive the same in evidence as such, and to permit the jury to consider the same; that said book account was not in fact a true and genuine book account, kept by Stickney in the due and regular course of business, but, to the contrary thereof, was a false, fictitious, fraudulent, and fabricated account, prepared with the sole intent and purpose of being used in evidence by the plaintiff in the trial of said cause; that each and all of said facts were known to O'Brien, and said false, fictitious, fraudulent, and fabricated account was used in said trial with the full knowledge, permission, and consent of O'Brien, contrary to the form, spirit, and obligation of his oath as an attorney of this Court.

The order attached to the complaint required O'Brien to appear before the Supreme Court on a day named, then and there to answer the complaint, but he was not required to make answer under oath, and did not do so. His answer in substance denied all charges of wrong doing.

WATSON, C. J. (after making the foregoing statement). From what is shown in the above statement as to the allegations and charges contained in the original complaint, the respondent was charged with two offences committed by him in connection with the case of *Eastman and Clement* v. *Vermont Marble Company*, namely: First, an attempt to deceive the chancellor before whom the cause was then on trial, and to that end, wilfully and knowingly giving false testimony, the effect of which was, if believed, to show that the alleged written agreement was, as to Eastman and Clement, newly discovered evidence, within the meaning of the law, a fact essential for them to establish in order to entitle them to the relief sought; and second, by unlawfully conspiring with Eastman to deceive the court by knowingly and wilfully giving false testimony to show and for the purpose of establishing that said alleged written agreement was a

genuine instrument, when in each respect he then and there knew the fact to be otherwise, the ultimate purpose and design of the two together being to defeat, reverse, and nullify a previous decision and decretal order of the court of chancery against Eastman and Clement, and a decision and mandate of this Court.

The offence charged against the respondent in connection with the case of *Stickney* v. *Estate of Holmes*, was that he permitted his client to use, and consented to his using, in evidence in the trial thereof, a false, fictitious, fraudulent, and fabricated book-account to establish his claim against the estate, with full knowledge that said book-account was of such dishonest character, in violation of his oath as an attorney of this Court.

[1]   If the charges be true, they were attempts by the respondent, in two cases pending in the courts of this State, and on trial therein, in one of which he was counsel of record for the plaintiff, to pervert and obstruct justice: in one by deceiving the court through perjured testimony given by himself, and in the other by permitting his client to use in evidence as a genuine book-account kept by the latter in due course of business, a dishonest piece of evidence fraudulently prepared for the very purpose of procuring a verdict in the latter's favor.   These were grave charges, not to be overlooked nor allowed to pass without a full and searching investigation according to law governing such proceedings; for if, by any act of commission or omission, an attorney deceives the court so that he obstructs or pollutes the administration of justice, or by the suppression of truth obtains a result not warranted in law, he is guilty of malpractice and renders himself unworthy of the privileges which his license to practice law confers upon him.   *Wernimont* v. *State,* 101 Ark. 210, 142 S. W. 194, Ann. Cas. 1913 D, 1156.

Commissioners being appointed to hear the evidence and make report of the facts found by them, and a time being fixed by them for such hearing, the respondent addressed his motion to this Court asking that the hearing be postponed on the grounds:   First, that the aforementioned criminal prosecution, pending against him, should be determined before anything further be done in the disbarment proceedings; and second, that his physical disability was such as to prevent him from attending such hearing at the time fixed therefor.   Both grounds of the motion were opposed by the Attorney General, as without merit.

In view of the character of the charges made in the complaint for disbarment, the first ground of the motion, necessarily decided *in limine* upon the complaint and answer, was overruled; and as to the second ground, the Court stated in effect that it was a question which could better be determined by the commissioners as it might be made to appear before them.

[2]    Although the petitioner in effect states in his petition that it was discretionary with this Court to order an investigation of the charges made against him, as it did, without awaiting a trial on the information for perjury, yet the failure so to await, is one of the several reasons urged why the filing of the petition for reinstatement should be granted. *In Ex parte Wall*, 107 U. S. 265, 27 L. ed. 552, 2 Sup. Ct. 569, the Court, speaking through Mr. Justice Bradley, said: "From this review of the authorities in this country, it is apparent, that whilst it may be the general rule, that a previous' conviction should be had before striking an attorney off the roll for an indictable offence, committed by him when not acting in his character of an attorney, yet, that the rule is not an inflexible one. Cases may occur in which such a requirement would result in allowing persons to practice as attorneys, who ought, on every ground of propriety and respect for the administration of the law, to be excluded from such practice. A criminal prosecution may fail, by the absence of a witness or by reason of a flaw in the indictment, or some irregularity in the proceedings; and, in such cases, even in England, the proceeding to strike from the roll may be had. But other causes may operate to shield a gross offender from a conviction of crime, however clear and notorious his guilt may be: a prevailing, popular excitement; powerful influences brought to bear on the public mind or on the mind of the jury; and many other causes which might be suggested; and yet, all the time, the offender may be so covered with guilt, perhaps glorying in it, that it would be a disgrace to the court to be obliged to receive him as one of its officers, clothed with all the prestige of its confidence and authority. It seems to us, that the circumstances of the case and not any iron rule on the subject, must determine whether and when it is proper to dispense with a preliminary conviction."

In our opinion it would be difficult finding a case where, in the circumstances shown by the complaint and the charges preferred, an investigation of the matter by disbarment proceedings,

without awaiting the result of a criminal prosecution, is more demanded for the protection of the courts of the State, for the well-being of the legal profession, and for the safety of the public, than where, as in the case of O'Brien, the charges are preferred by the highest prosecuting officer of the State, of attempts to obstruct the due administration of justice by perpetrating, or attempts to perpetrate, a fraud upon the court. See *In re Jones,* 70 Vt. 71, 39 Atl. 1087; 2 Thorn. Attys. at Law, § 778. And if this be done, or permitted to be done by an attorney of record in a case on trial, as and in the manner charged in the complaint, in connection with the Stickney Case, it is not only a gross fraud, an outrageous imposition upon the administration of justice, but it is a violation of the attorney's oath of office. *People* v. *Beattie,* 137 Ill. 553, 27 N. E. 1096, 31 A. S. R. 384.

This Court would subject itself to criticism as derelict in duty, if, in the circumstances and charges presented, the honor of the courts of the State, and of the legal profession, and the safety of the public, as involved in the administration of the law in its integrity, are seriously endangered, unless under its orders and directions appropriate proceeding be had according to law, to ascertain the truth or falsity of the charges as soon as reasonably may be, rendering such judgment as the facts found and reported, in justice require. The Supreme Court of the United States, speaking through Mr. Chief Justice Taney, has said respecting the power of disbarment: "The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court, as the rights and dignity of the court itself." *Ex parte Secombe,* 19 How. 9, 15 L. ed. 565. So the commissioners very properly disposed of the same ground of a motion subsequently made by the petitioner before them, by holding that they would not be justified in continuing the case because of that, since that was the question the Supreme Court had passed upon.

[3]   The ruling made by the commissioners in disposing of the other grounds of the respondent's said motion before them, seems to have been in accordance with the law and general rules of practice in this State. They said: "That as to the possibility of some of the witnesses now charged with some criminal offence

claiming their privilege and refusing to testify, we should hardly be justified in continuing the case for that reason, in trying to forecast what they might say or refuse to say. We can only deal with those things as they come. As to the statement made here by the defendant, by his attorneys, as to his physical condition and inability to go on with this case, we say that we should hardly be justified in continuing the case on that statement alone; that, if the case was to be continued by reason of the illness or sickness or inability of the defendant to participate in these proceedings, it should be upon such proof as to fully satisfy the commission of that fact and justify their action. As the case now stands, we think the hearing should go forward.''

There is nothing showing, and it is not claimed, that the witnesses referred to in the motion as claiming their privilege and refusing to testify, were subpœnaed by the respondent to be present at the hearing. They would have been obliged to obey such a subpœna, and to be sworn as witnesses. Then and not till then could any one of them claim the constitutional privilege which is strictly personal, and whether such privilege existed was a question for the commission to determine from the circumstances of the case and the nature of the evidence which the witness was called upon to give. *In re Consolidated Rendering Co.*, 80 Vt. 55, 66 Atl. 790, 11 Ann. Cas. 1069.

[4] The part of the ruling relating to a continuance on the ground of the physical condition or inability of the respondent to go on with the hearing at that time, only went to the extent of saying that the mere statement of his counsel in that respect was not enough to justify a granting of the motion; that such proof should be presented as would satisfy the commissioners of the fact. This was in accordance with the well known practice in this State, and was exacting nothing unreasonable.

The report shows that, upon such ruling being made, counsel for the respondent, instead of supplying or attempting to supply such proof, withdrew from the hearing and did not further participate therein, although one of said counsel remained in the room as an observer and listener at the proceedings throughout most of the hearing which thereafterwards continued for six days on evidence adduced.

[5] The petition alleges the filing of the information against the petitioner in the Rutland county court on the 13th day of April, 1918, by the Attorney General of the State, charg-

12

ing that he was guilty of the crime of perjury and that he had falsely testified in substance as set forth in the petition, and further alleges that an information was also filed in the same court on the same day, against George P. Eastman, "in which it was alleged that he, the said Eastman, was guilty of perjury, in that he testified falsely with respect to said Exhibit No. 1, and with respect to his whereabouts on the occasion of your petitioner being in Albany aforesaid, and that the perjury charged in the case against your petitioner and against the said Eastman were each based upon the question of the validity of the contract or document known as Exhibit No. 1, and that the two cases were in fact companion cases." The petitioner further alleges that the issue in the criminal prosecution and in the disbarment proceedings were whether the document, Exhibit No. 1, was genuine or forgery; "that the perjury charged against said Eastman and the perjury and conspiracy charged against your petitioner depended entirely upon the question whether said document was genuine or a forgery"; that at the March Term, 1919, of the Rutland county court, Eastman was tried by jury for said crime of perjury and acquitted; that under the charge of the court upon some counts, at least, it became necessary for the jury to determine whether the document was genuine or a forgery; and, if genuine, there must have been an acquittal, if a forgery, a conviction, and in order to discharge Eastman it became necessary to find on those counts that the document was genuine.

Assuming it to be true that much of the evidence introduced in the Eastman trial would be proper evidence in disbarment proceedings against O'Brien, yet the verdict or judgment of acquittal in the Eastman case is not proper evidence in such disbarment proceedings. A hearing in the latter is judicial and must be governed by the same rules which govern other trials of questions of fact, and the evidence on each side must be such as is legally competent to maintain the issue. *People* v. *Amos,* 246 Ill. 299, 92 N. E. 857, 138 A. S. R. 239; 2 R. C. L. 1108, § 201; *State* v. *Mosher,* 128 Ia. 82, 103 N. W. 105, 5 Ann. Cas. 984. More than one reason might be given why the judgment in the Eastman criminal case is not competent evidence in disbarment proceedings against O'Brien, but it is enough to say that the parties are not the same. 1 Greenl. Ev. § 524; *People* v. *Amos.,* cited above.

[6]   The petitioner further alleges that, after the verdict of acquittal in the Eastman case, he with counsel was in court, ready and urging the court to try the criminal case against him, and, the same being ordered for trial, the Attorney General entered a *nolle prosequi* of the case; and that this was done because the petitioner was not guilty of said charges and the State knew that he could not be convicted.   But where disbarment may be ordered for criminal misconduct without awaiting a conviction thereof, an acquittal will not, as of course, prevent the entry of an order to that end.   In the Matter of ——, 86 N. Y. 563; *People* v. *Thomas*, 36 Colo. 126, 91 Pac. 36, 10 Ann. Cas. 886.   Nor will the refusal of a grand jury to find an indictment for the same criminal misconduct charged in disbarment proceedings, be a defence to the latter.   *In re Wellcome*, 23 Mont. 213, 58 Pac. 47.   And for the same reason the entry of a *nolle prosequi* in a criminal prosecution does not constitute a defence to disbarment proceedings based on the commission of the crime. *In re Davis*, 93 Pa. St. 116, 39 A. R. 729; 2 Thorn. Atty. at Law, § 864.   Mr. Greenleaf says: ''It is obvious that, as a general rule, a verdict and judgment in a *criminal case*, though admissible to establish the fact of the mere *rendition* of the judgment, cannot be given in evidence in a civil action, to establish *the facts on which it was rendered*.   If the defendant was convicted, it may have been upon the evidence of the very plaintiff in the civil action; and if he was acquitted, it may have been by collusion with the prosecutor.   But beside this, and upon more general grounds, there is no mutuality; the parties are not the same; neither are the rules of decision and the course of proceedings the same.   The defendant could not avail himself, in the criminal trial, of any admissions of the plaintiff in the civil action; and, on the other hand, the jury in the civil action must decide upon the mere preponderance of evidence, whereas, in order to a criminal conviction, they must be satisfied of the party's guilt, beyond any reasonable doubt. The same principles render a judgment in a *civil action* inadmissible evidence in a criminal prosecution.''   1 Greenl. Ev. § 537.

[7]   The petitioner alleges that certain evidence to which reference is made in the petition, is newly discovered.   But inasmuch as his counsel withdrew from participation in the hearing before the commissioners, and no evidence was introduced or even offered in his behalf, it is not apparent what bearing the so-

called newly discovered evidence has on the question now before us. If the filing of the petition be granted, it will be for reasons other than the alleged newly discovered evidence. It goes without saying that, if a rehearing be had of the issues presented by the complaint and the answer thereto, the door is again open for the reception of any legally competent evidence offered on either side.

The commissioners reported that, as to the charges made against respondent in connection with the Stickney Case, they are not sustained. Substantially all the other charges in the complaint against him were found to be true. The findings are stated with great fullness in the report of the case in 93 Vt. 194, 107 Atl. 487, to which reference is here made. The petition, to file which leave is now sought, has received that careful and painstaking consideration, which a matter of this nature, and of such importance, not only to the petitioner, but to the courts of the State, to the legal profession, and to the public welfare, demands. Although the duties we have been called upon to perform in connection with these disbarment proceedings have been most unpleasant, and the occasion for their performance much to be regretted, we have always undertaken to perform them, and do now, as in our judgment the circumstances and the law require without fear or favor. We do not think the petition under consideration presents a case which ought to be entertained by way of vacating the judgment of disbarment or granting a rehearing of the original case.

*The filing of the petition is therefore denied.*