# Barach's Case.

*Attorneys-at-law—Disbarment—Use of perjured witnesses—Res adjudicata—Acquittal of criminal charge.*

1. Where an attorney-at-law has secured a false verdict in which he has a large interest, by using the corrupt and perjured testimony of witnesses whom he has instigated so to testify, he has directly violated the official oath administered to him on admission to the bar, and, upon proof of such conduct, he will be disbarred.

2. Acquittal in the federal court of criminal charges against an attorney-at-law, is not res adjudicata so as to prevent a state court from subsequently disbarring him on substantially the same charges.

3. The proceedings in the two cases are entirely different inasmuch as one is criminal and the other civil, and the evidence necessary to convict, and to justify the order of disbarment, are measured by different standards. In the former the attorney is entitled to a jury trial, while in the latter it is not a matter of right. In the former he may not be required to testify, in the latter he may be compelled to do so.

Argued October 16, 1923.  Appeal, No. 91, Oct. T., 1923, by Louis V. Barach, from order of C. P. Allegheny Co., Jan. T., 1923, No. 1396, making absolute rule to disbar in Petition of Disbarment of Louis V. Barach.  Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Rule on attorney-at-law for disbarment.  Before REID, KLINE and DOUGLASS, JJ.

The opinion of the Supreme Court states the facts.

Rule absolute.  Respondent appealed.

*Error assigned* was, inter alia, order, quoting record.

*Ralph P. Tannehill,* with him *William J. Brennen,* for appellant.—A particular sentence imposed or judgment rendered by a court having jurisdiction cannot be reviewed collaterally in any other court in any kind of a proceeding: Gottesfeld's Case, 245 Pa. 314; Devine's Est., 199 Pa. 250; Brenner v. Moyer, 98 Pa. 278; Kelsey v. Murphy, 26 Pa. 78; Wilson v. Hamilton, 9 S. & R. 424; Kitchen v. Campbell, 3 Wilson 394; Otterson v. Middleton, 102 Pa. 78.

The evidence was not sufficient to justify the order: Shoemaker's Case, 2 Pa. Superior Ct. 27.

*W. A. Challener,* with him *H. V. Blaxter* and *John G. Frazer,* for appellee.—The acquittal of Barach in the federal court was not admissible in evidence, nor was it a bar to the present proceeding: Morch v. Raubitschek, 159 Pa. 559; Campbell's Case, 197 Pa. 581; Hutchinson v. Bank, 41 Pa. 42; Davies's Case, 93 Pa. 116.

OPINION BY MR. JUSTICE SADLER, January 7, 1924:

In December, 1921, a petition was presented by the Allegheny County Bar Association asking that Louis V. Barach,—admitted to practice there in 1911,—show

cause why his name should not be stricken from the roll of attorneys. An answer was filed denying the misconduct alleged. At the hearing subsequently had, voluminous testimony was offered in support and denial of the charges. An order disbarring the respondent was ultimately entered, and from the decree we have the present appeal. The sufficiency of the evidence to justify the conclusion reached is attacked, as is the right of the court below to hear and determine the question at issue, in view of a previous acquittal of Barach in the federal courts of conspiracy, based on the facts, which are made the foundation of the present proceeding, though the latter is more comprehensive, as will be noticed later.

Before discussing the legal propositions involved, it is necessary that a brief review of the facts developed in the court below be had. Barach, through the interposition of a friend, Anderson, was employed as counsel for one Adams, who was seriously hurt December 25, 1918, on the railroad line near Atlasburg in Washington County. Information as to attendant circumstances was furnished through an interpreter, and a statement was prepared and served, the claim for damages being based on an injury received while crossing the tracks close to the town named. The manner of the happening of the accident, as first set forth, coincides with particulars given to the Russian consul by the plaintiff. Some months later an amended declaration was filed, alleging it was caused by a sudden starting of the train, while Adams was attempting to board it at the station, about 2,400 feet distant from the point first designated. This paper was dictated by an associate of Barach, employed to aid at the trial,—to whom no blame attaches,—and was founded upon new facts presented by respondent, and others, whom he produced as witnesses. It will be observed that, if the first claim made had been insisted upon, explanation would have been required to show how plaintiff could have been struck at the private road and be found with one leg severed, and the other in-

jured, at a point 800 feet nearer to Atlasburg, though
the train was moving in the opposite direction. The
reason given for the alteration was an alleged misunder-
standing arising from mistake of the first interpreter
who interviewed Adams, but the court has found, on
sufficient evidence, that Barach knew the facts appearing
in the second statement were false and untrue. At the
trial which followed, three of the witnesses called by
plaintiff were Mance, Davis and Belasto, all of whom
testified to their presence when Adams was hurt, and to
facts tending to establish his claim. The jury returned
a verdict for $5,000.

An application for a rehearing, on the ground of after-
discovered evidence, was at first refused, but later
granted. The new matters upon which the motion was
based were made known by investigation of statements
of Anderson, the person who secured the employment
of Barach to conduct the litigation, under promise of a
share in the amount recovered. Apparently angered by
the refusal of counsel for plaintiff to comply with his
demands for cash, and after threatening to disclose the
true facts, he called on the attorney for defendant, offer-
ing, for a consideration, to give information which
would defeat the claim in suit. He was referred to
others, and finally the amount asked for the promised
assistance was paid. This was at a time too late in the
trial to ascertain the accuracy of the story, and he was
not called as a witness. When the new hearing was had,
Mance, Davis and Belasto were alleged to be absent,
and their testimony, previously given, was offered,
though, as found by the court below, known by Barach
to be false. In reality, Davis was then in Pittsburgh
with officers of the government, and Mance was also
there. After the introduction of this former evidence,
Barach was arrested on a charge of conspiring with
Mance and Davis to defraud the United States, as the
claim was presented against the director general of rail-
roads. When advised of the situation, in the new trial,

a verdict for defendant was directed by the presiding judge.

At the trial of the conspiracy charge in the district court, Mance and Davis pled guilty, but Barach was acquitted. The proceedings for disbarment of the latter were then resumed, having been held in abeyance during the pendency of the prosecution, and the facts, as already detailed, were shown. The two convicted admitted the commission of perjury at the trial in which the recovery of damages was sought, swearing the narrative related by them was at the instigation of respondent. It was clearly established they were not at Atlasburg when Adams was injured, nor did they give their names as witnesses at the time to Belasto, who likewise appeared for plaintiff, and so testified. Their statements were pure fabrications, and the court has found all were suggested by the attorney for plaintiff. As confessed perjurers, the testimony given by them is to be scrutinized with care, and received with caution, yet the existence of the fraud, to which they admittedly lent their aid, and which was planned and attempted to be carried through by Barach, is plainly indicated by the evidence of record.

Barach denied the truth of the allegations made, but in many important matters was contradicted, and his credibility seriously impeached. The repudiation of his signature to the first statement filed,—shown to be untrue;—his reason for changing the facts in the declaration upon which the trial was had, which he knew were false; his denial of acquaintance with Mance and Davis prior to the beginning of the Adams case, when it appeared they were present at a previous trial conducted by him; and his connection with the second interpreter, and the witness Kassimir, who had testified under different names, in the proceeding referred to all tended to discredit him as a witness. Further, his visit to Davis at San Francisco, after the first trial, and the subsequent warning that the witness remain silent, after dis-

covery was made that Mance had been questioned concerning his part in the transaction, are significant. Though agreeing that transportation would be supplied, so that Davis might appear at the second hearing, this was not furnished, the respondent preferring to rest on the evidence as given previously. In the case of Mance, to whom the wisdom of disappearance was suggested, in view of certain statements made by him, it was proven that, during the progress of the second trial, when supposedly he could not be found, the witness was for a time in the home of Barach.

Other suggestive details, concerning which testimony was offered, might be adverted to, but sufficient has been said to show the court below was justified in finding respondent was a party to an attempt to procure by false testimony an unjust verdict, in the proceeds of which he had a financial interest to the extent of fifty per cent. That Mance and Davis, two of the leading witnesses, were admittedly guilty of perjury, and also awaiting sentence for conspiracy, does not alter the conclusion reached. The facts and circumstances, attending the case, furnish corroboration of their statements. Nor is it material that this attempt to pervert justice was thwarted as a result of the information supplied for compensation,—by Anderson,—not called as a witness. Often, the truth is discovered, following a plan such as here adopted, and wrongdoing thus laid bare.

It is further urged that the court was without power to proceed in the present case because of Barach's acquittal on the conspiracy charge in the United States District Court, the evidence presented in the disbarment proceeding being largely the same as there offered, though the additional offense is averred of inducing Belasto to give false testimony. We are asked to say that the finding of the jury in the federal court renders the entire controversy res adjudicata, and the state tribunal is concluded thereby, but we cannot agree with this view.

The proceeding referred to was criminal, in the name of the government, and that for disbarment was of a civil nature. Rules of procedure vary in the two classes of cases, and evidence necessary to convict, and that to justify an order of suspension, are measured by different standards. In the former, the defendant was entitled to a jury trial, in the latter, it is not a matter of right: Balogh v. Jackson, 272 Pa. 482; Smith's App., 179 Pa. 14. The defendant charged with crime cannot be compelled to testify, but the contrary is true in a case such as this: Vaughan's Case (Cal.), 209 Pac. 353, 24 A. L. R. 858, and note. The actions and parties are essentially distinct, and as an acquittal on an indictment will not prevent the maintenance of a civil suit, based on the same facts, the judgment here rendered in the first, does not prevent the carrying on of the second: Morch v. Raubitschek, 159 Pa. 559. The purpose of the criminal prosecution was punishment, and that in the state court protection (Gottesfeld's Case, 245 Pa. 314), where the power of the court to remove an attorney is exercisable though the facts fail to show the commission of a crime (Dickens's Case, 67 Pa. 169), or leave a doubt of any criminal intent: Gates's Case, 17 W. N. C. 142. It was not attempted here, as in the Gottesfeld Case, supra, relied on by appellant,—where the attorney claimed he was not guilty of the accusation made, though previously convicted,—to impeach the record of the federal court, for, in the present case, the question trying was the misconduct of respondent in his office of attorney and not his guilt or innocence of a charge to defraud the United States Government. Even in criminal cases, one may be tried in both jurisdictions, when the same acts constitute offenses against the state and federal government (United States v. Lanza, Supreme Ct. Adv. Op., Jan. 1, 1923, 169), and the action in one is not a bar to the prosecution in the other.

The conclusion stated finds authority in the decisions of many states,—where statutes do not otherwise pro-

vide,—and disbarment may be properly ordered though an indictment is pending (Shoemaker's Case, 2 Pa. Superior Ct. 27), a nolle prosequi has been entered after indictment found (Davies's Case, 93 Pa. 116; O'Brien's Case (Vt.), 113 Atl. 527), a dismissal of the criminal proceedings ordered (State Bar Comm. v. Sullivan, 35 Okla. 745, 131 Pac. 703), an acquittal has been had before the disbarment proceeding is heard (Smith's Case, 85 Pac. 584, 73 Kan. 743; People v. Thomas, 36 Col. 126, 10 Ann. Cas. 886, and note; Attorney's Case, 86 N. Y. 563; cf. Campbell's Case, 197 Pa. 581,—the statement to the contrary in Shoemaker's Case, supra, is mere dictum,—), or after pardon granted: Attorney's Case, supra. And the rendition of a verdict of not guilty of the crime charged, subsequent to the order of suspension, does not, as a matter of right, give defendant the privilege of reinstatement: Kennedy's App., 178 Pa. 232. With this view of the applicable legal principle, the text writers will be found to agree: 6 C. J. 588; 2 R. C. L. 1102. We are convinced there is no merit in the assignments of error based on the discharge in the federal court, or in the rulings on evidence in connection therewith, and, without special reference to them, all are overruled.

We have examined with care the entire record presented here, and are of the opinion that the evidence warrants the removal of respondent from his office as attorney. Though the power to so order is always to be exercised with great caution (Sherwood's Case, 259 Pa. 254; Maginnis's Case, 269 Pa. 186), yet there should be no hesitation in directing disbarment where made necessary for the protection of the court and the public: Graffius's Case, 241 Pa. 222. The attempt to secure a false verdict by corrupt and perjured testimony is a direct violation of the official oath administered on admission to the bar (Act April 14, 1834, P. L. 333, section 73), and, upon proof of such conduct, suspension must follow. In such case, the court below is charged with

a delicate and unpleasant duty, and, where it has impartially considered the testimony offered, and fairly applied the law, as appearing here, its finding should be sustained: Davies's Case, 93 Pa. 116; Attorney's Case, 86 N. Y. 563.

The decree is affirmed, the costs to be paid by appellant.