## Wolfe's Disbarment.

*Attorney-at-law—Disbarment—Conviction of crime—Pardon.*

1. The pardon of an attorney convicted of receiving stolen goods does not prevent the court from subsequently disbarring him for proper cause, even though the cause is discovered in the subject-matter for which he has been pardoned.

2. An attorney who, in the course of his business as pawnbroker, makes a practice of receiving stolen goods from known thieves and representing himself as able, in his professional capacity, to aid them in procuring immunity from the law, should their criminal acts be detected, and thereby encourages and solicits further business of this unlawful character, his conduct in this respect being deliberate and systematic, will be disbarred.

Petition of the Law Association of Philadelphia. C. P. No. 2, Phila. Co., Sept. T., 1924, No. 10129.

*F. B. Biddle* and *F. C. Newbourg, Jr.,* for petitioner.

*Isaac Levy,* for respondent.

GORDON, JR., J., Dec. 29, 1925.—The respondent, a member of the bar, was tried and convicted of the crime of receiving stolen goods, and in February, 1923, was sentenced to not less than one nor more than two years in the Eastern Penitentiary. After serving ten months of this sentence, he was pardoned by the Governor of the Commonwealth on the recommendation of the Board of Pardons. Thereafter, in December, 1924, the petition before us was presented by the Board of Censors of the Law Association, asking for the disbarment of respondent because of his conviction of the offence stated and as a person shown, by his criminal acts, to be unworthy of that trust and confidence which is essential in an officer of the court, and unfit to be accredited to the public as a trustworthy and reliable attorney.

The respondent makes answer to the petition: First, that he was not guilty of the offences for which he was convicted; and, second, that his pardon completely wipes out the offences and all their consequences and places him in the same position as if he had never committed them, and that, therefore, he cannot be disbarred because of them.

Considering the second of these answers first, we cannot agree that a pardon has the effect contended for by the respondent. Doubtless, a pardon does wipe out a conviction and all its consequences and completely relieves the person pardoned of all present disabilities and future responsibility to the State for the acts committed. It does not alter moral character, however, nor change the natural consequences of the disclosure of the real character of the individual. It cannot wipe out the act which he committed, or deprive the court of the right to protect itself and the public from the dangers of entrusting the high and responsible office of attorney to irresponsible and morally oblique persons. Disbarment is not a punishment, although its consequences may work hardship. It is not resorted to by way of discipline, but to rid the profession of the unfit. The duty of the court to disbar an unworthy attorney is analogous to the duty of a principal to discharge an untrustworthy agent. It involves self-protection and fair dealing with others. The weight of authority is to this effect: Ex Parte Wall, 107 U. S. 265; Barach's Case, 279 Pa. 89 (in which an acquittal in a Federal court of a criminal charge is held not to prevent a subsequent disbarment by a state court on the same charge); Dickens's Case, 67 Pa. 169; Gates's Case, 17 W. N. C. 142; Kennedy's Disbarment, 178 Pa. 232; 6 Corpus Juris, § 45, page 587.

We have considered with great care the case of Ex Parte Garland, 4 Wallace, 333, which the respondent contends holds that the pardon removes the

right to disbar. While the language of the Supreme Court of the United States in that opinion is broad, the actual decision of the court turns upon an entirely different question. In that case Congress had passed an act providing that no person should be admitted to the Federal courts without having first taken an oath in which he declared that he had never borne arms against the United States. Garland had borne arms against the United States, but had been pardoned by the President, and the Supreme Court held that the act prescribing the oath was *ex post facto* and unconstitutional, as partaking of the nature of a bill of pains and penalties and depriving the President of the power of pardon. This is entirely different from deciding that the court could not have refused to admit Garland or disbarred him, had it deemed his conduct in the past such as to disclose that he was an unfit person to practice as an attorney.

We, therefore, conclude that the pardon of the respondent does not prevent us from disbarring him for proper cause, even though the cause is discovered in the subject-matter for which he has been pardoned. The only effect of a pardon is to prevent a disbarment on the basis of the conviction (Matter of Emmons, 29 Cal. App. 121), which, when secured, dispenses with the necessity for proof of guilt: In re Gottesfeld, 245 Pa. 314.

This brings us to a consideration of the first answer of the respondent, in which he denies his guilt as a receiver of stolen goods. In considering that question, we must ignore the record of the respondent's conviction of crime and treat the matter as if he had never been charged with, or convicted of, receiving stolen goods, requiring the proof of his misconduct independent of the record in the criminal case. For this purpose it was agreed, at the hearing, that the notes of testimony taken at the trial should be considered as if presented at the hearing of this rule. We have considered that evidence with care, and are forced to the conclusion that, prior to his indictment, the respondent, in addition to his activities as a practicing attorney, conducted the business of a pawnbroker; that in this business he made a practice of receiving stolen goods from known thieves; that he represented himself as able, in his professional capacity, to aid them in procuring immunity from the law, should their criminal acts be detected, and thereby encouraged and solicited further business of this unlawful character; and that his conduct in this respect was deliberate and systematic.

The respondent has thus disclosed a character which, if known, would have prevented his original admission to the bar, would have required his disbarment had the facts been brought to the attention of the court immediately after, but independent of, his conviction, and which a proper regard for the dignity, honor and responsibility of the profession requires us to discountenance and condemn by removal from the roll of attorneys. As was said by the Supreme Court in 245 Pa. 314, *supra:* "In his high office the attorney-at-law is a minister of justice; he ceases so to be when, whether in the line of his professional work or outside of it, he prostitutes his knowledge of the law and the skill he has acquired therein to thwart the law by deceit and falsehood in its one and only purpose, viz., to accomplish distributive justice among men." This, in a different line of activity, the respondent has done. Should we longer accredit him to the public as worthy of trust and confidence? We think not.

Justice Mercur tersely defined the duties of the court to the public in relation to the *personnel* of the bar when he said In re Samuel Davies, 93 Pa. 116: "By admitting him, the court presents him to the public as worthy of its confidence in all his professional duties and relations. If afterwards it comes to the knowledge of the court that he had become unworthy, it is its duty to

withdraw that endorsement and thereby cease to hold him out to the public as worthy of professional employment."

We are not unmindful of the thought which has been urged upon us with forceful sincerity that the length of time which elapsed between the conviction of the respondent and the filing of the petition under consideration (covering a considerable period served in prison, the granting of the pardon and a return to some activity in practice) suggests that a disbarment now would savor of further punishment for a wrong long since committed, expiated and pardoned. This consideration has prompted us to move slowly and with careful deliberation in the matter, and would have been controlling against disbarment had we approached the question from the punitive or correctional standpoint. Our decision is reached from no such consideration. By purging the bar of one who, by his acts, has forfeited the confidence of the court, we are vindicating the honor and high standing of the profession, and justifying public confidence in those whose trustworthiness we have publicly endorsed by admitting them to the bar and retaining them on the roll of attorneys-at-law.

The petition of the Law Association is, therefore, granted; said respondent is hereby disbarred from the office of attorney in this court, and the prothonotary is directed to strike his name from the roll of attorneys and to give notice of this action to the Orphans' Court of Philadelphia County and to the Supreme and Superior Courts of Pennsylvania.