PEGGY NASON *v.* JONATHAN M. BLAISDELL.

FRANKLIN,
*January,*
1840.

The judgment of a court of record is not conclusive, except as to parties or privies.

Strangers may impeach such a judgment, collaterally, by disproving the facts upon which it was predicated.

EJECTMENT, to recover the south half of lot No. 26, in St. Albans. Plea, not guilty. Issue to the country.

Upon the trial, in the county court, the plaintiff offered in evidence a deed from B. Langdon to Wm. Nason of the land in question, dated November 26, 1801, which was admitted, and introduced evidence tending to prove that Wm. Nason took possession of the land, under said deed, as early as 1801, and occupied it until the time of his death in December, 1810; that after his death, his widow, Mary Nason, remained in possession of about twenty five acres of the east part of the south half of said lot, claiming the same as a part of William Nason's home farm, under the will of her said husband, to the time of her death, which happened in 1839, and that she was the widow of said William, at the time of her death.

The plaintiff also gave in evidence a duly certified copy of the will of the said William, from which it appeared that the said William made the following devise and bequest to the said Mary, viz:—

'I give to my beloved wife, Mary Nason, during her na-
'tural life and so long as she shall remain my widow, all my
'home farm, on which I now live, with all the buildings
'thereon standing and the privileges thereto appertaining;
'likewise, during her remaining unmarried, all the household
'furniture I shall die possessed of, farming utensils, &c.'

The testator also gave pecuniary legacies to several of his children and devised and bequeathed to his son, John Nason, all his property, after the death or marriage of the said Mary Nason, upon a condition that he, the said John, should pay the legacies mentioned in said will; and the testator bequeathed to Peggy Nason, the plaintiff, a legacy of two hundred dollars, and other personal property, and the right to live and remain in the testator's house, "and have and enjoy the same privileges as she now does, so long as she is unmarried."

The plaintiff also gave in evidence a deed of the land in question from said John Nason to herself and others, dated July 21, 1820, and proved that the defendant entered into possession of the premises in April, 1834, and continued in possession to the time of the trial.

The defendant gave in evidence a power of Attorney from Jotham Bush to Holloway Taylor, dated October 2, 1800, authorizing the said Taylor to lease, sell and otherwise dispose of his, the said Bush's, lands in Franklin county, which lease was duly executed and recorded, and a perpetual lease of the land in question, executed by the said Taylor, as attorney for the said Bush, to the said William Nason, reserving a yearly rent of six dollars and twenty five cents, and a right of re-entry upon said land for non-payment of rent, in the words following;—' and if any one year's rent remains unpaid for ' more than one year so that two years rent becomes due and ' unpaid, then it shall be lawful for the said Holloway Tay-' lor, his heirs and assigns, (after giving the tenant so in ar-' rear for rent thirty days notice, in writing, the whole or part ' of the rent still remaining due and unpaid,) to re-enter up-' on the premises and take possession thereof and put out of ' possession the said Wm. Nason, his heirs and assigns.'

The defendant also gave in evidence the record of a judgment, rendered by Franklin county court, at their September term, 1827, in an action of ejectment for the same land, in favor of the said Bush against the said John Nason, and a writ of possession, issued on said judgment, with the officers return thereon, showing that possession of said land had been given to the said Bush by virtue of said writ of possession.

The defendant then introduced a perpetual lease from Jotham Bush to Israel P. Richardson of the same land dated December 16, 1827, and a deed from said Richardson to the defendant, dated August 20, 1833, conveying the same land to the defendant.

The plaintiff then offered to prove that, in 1827, John Nason became solicitous to defeat the title which he had given to the plaintiff and, for the purpose of effecting that object, entered into an agreement with said Bush that Bush should bring an action of ejectment against said John Nason,

to recover the seizen and possession of the land in question; that a judgment should be rendered in that action in favor of Bush and that Bush should thereupon execute a lease of said land to such person as John Nason should direct, to be held, in trust, for the benefit of said John; that in pursuance of that agreement the action of ejectment, the record of which was given in evidence, as above stated, was commenced by said Bush against said John, and a judgment was rendered therein for Bush, and that, after said judgment was rendered, Bush, by the direction of said John, executed the lease to Richardson for the benefit of said John; that Richardson held the title under his lease from Bush, as trustee of said John, until the 20th day of August, 1833, when he executed the deed before mentioned to the defendant, by the direction of said John, and that the defendant held the title, so received from said Richardson, as the trustee of said John, and that, at the time Richardson executed the deed to the defendant, the defendant executed and delivered to the said John, a bond, dated August 20, 1833, which bond was proved and offered in evidence, that all the rents which had become due on said premises, had been regularly paid to said Bush or his assignee by said John, that the aforesaid action of ejectment was commenced and prosecuted by the fraudulent connivance between said Bush and John Nason for the purpose of defeating the rights of the widow of Wm. Nason and the plaintiff, and that no notice, in writing, as required by the lease from Bush to Wm. Nason, was ever delivered by said Bush, at any time, to Mary Nason or the plaintiff, and that the said Mary Nason and the plaintiff, nor either of them, had any notice of the pendency of the aforesaid action of ejectment; that the plaintiff and said Mary Nason, continued in possession and occupancy of said premises from the death of William Nason until 1829, at which time Mary Nason died, and that after the death of Mary Nason the plaintiff continued in possession and occupancy of said premises until April, 1834, when the defendant took possession of the land. All this evidence was objected to by the defendant and excluded by the court. The court thereupon decided that the recovery in the action of ejectment in favor of *Bush* **v.** *John Nason* was conclusive upon John Nason and all persons claiming title to said premises through or under him,

FRANKLIN,
January,
1840.

Nason
v.
Blaisdell.

whether derived by a conveyance from said John, made before or after the rendition of said judgment, and that the defendant was entitled to a verdict, and directed the jury to return a verdict for the defendant.

The jury returned a verdict for the defendant and the plaintiff excepted.

The bill of exceptions, in this case, presented other questions for the decision of this court, than those above stated, but, as they were not decided, they are here omitted.

*Smalley & Adams and A. O. Aldis,* for plaintiff.

I. Mary Nason was the legal tenant in possession of the land sought to be recovered in this action, claiming under the will of William Nason, from 1810 to 1829, consequently, the recovery in the action of ejectment, *J. Bush* v. *John Nason,* in 1827, could have no effect upon her right. As to Mary Nason this recovery was clearly *inter alios acta.*

II. The plaintiff, by the deed from John Nason, in 1820, became the owner of an estate, in remainder, in the premises in question, but had no right to the possession until the termination of Mary Nason's life estate, consequently, John Nason had no interest in the premises in question, at the time of the recovery in the action of ejectment in favor of Bush against him, in 1827, and was a mere stranger both to the title and right of possession. If so, the recovery of *Bush* v. *John Nason* cannot affect her right.

III. If the recovery in the action of ejectment of *Bush* v. *J. Nason,* did not give Bush a right of entry upon the premises, as against Mary Nason, in 1827, his entry was tortious unless he had a right of entry independent of that judgment.

The inquiry then is, whether Bush, by the terms of the lease under which he claimed, had a right of entry upon said premises at the time he took possession of them and leased to Richardson, in 1827? By the terms of the lease two things are necessary to give Bush a right of entry.

1. There must be two years rent due and unpaid.

2. Bush must have given the tenant in possession thirty days notice, in writing.

1. The plaintiff, on the trial, offered to prove that all the rents which had become due had been regularly paid to Bush or his assignee. If they had been regularly paid, they

must have been paid when they became due, and whether paid by John Nason or some other person is a matter of indifference. A payment of the money to Bush, as and for the rent upon said premises, would operate as a payment for the benefit of the real tenant and prevent a forfeiture. The evidence thus offered by the plaintiff was excluded by the court, but, upon what principle it was excluded, is, to us, not very apparent. 3 Cruise, 198, Sec. 74.

2. Bush could not legally enter upon the premises for non-payment of rent, until he had given the thirty days notice, in writing, as the giving of this notice was a condition precedent, to be performed before a right of re-entry accrued.

The second section of the act of 1818, (statute, page 109,) dispensing with the common law requisites of a demand of rent or re-entry upon the premises, has no bearing upon the present question, the act having been passed some eight years after the making of this lease.

IV. If Bush's entry was originally tortious, it remains so to the present time, and the defendant, who claims title under Bush, can be in no better situation than Bush himself, consequently, the present action to take the defendant out of possession is well sustained. *Hitchings* v. *Lewis*, 1 Burr. 614.

*H. R. & J. J. Beardsley and S. S. & G. W. Brown*, argued for defendant and contended,

1. That, from the evidence in the case, it legally results that the parties to this action both claim title to the land in question from the same source, viz., from Jotham Bush;

II. That the action of ejectment in favor of Bush and against John Nason, was conclusive upon John Nason and the plaintiff, and that the legal operation of the judgment in that action was to revest in Jotham Bush the whole title and interest in the land in question, and give him the absolute right of possession and actual possession, to the exclusion of all others; that Bush, having been put into possession of the premises, could hold the possession not only as against John Nason but against his grantees, whether they derived title from him before or after the rendition of that judgment;

IV. That the testimony offered by the plaintiff to show a fraudulent combination between Bush and John Nason, relating to the ejectment suit *(Bush* v. *Nason,)* and to show

that the defendant now holds the premises in question as trustee of John Nason, was properly rejected by the court below.

1. It could not avail the plaintiff as against the defendant to prove that the judgment was obtained by fraud. The judgment operated to put Bush into possession of the premises, and, so far as the world could regard it, he was legally and of right in possession, having full power to dispose of the estate. The defendant, then, must be regarded as a *bona fide* purchaser, and cannot, in any wise, be affected by any fraud between Bush and Nason.

2. If the defendant were, in fact, holding the premises as trustee of Nason, it could not avail the plaintiff, at law. It could only be enquired into and reached in chancery.

The opinion of the court was delivered by

REDFIELD, J.—The only important question arising in this case, which the court have deemed it necessary to decide, at this time, is, as to the effect of the judgment in favour of *Bush* v. *Nason*, September, 1827. There is no evidence in the case, except that furnished by the judgment itself, that John Nason was ever in possession of the premises, or that he is not a mere stranger to the title of Wm. Nason. For it does not appear that he ever claimed title under the will, or performed the conditions upon which the land was devised to him. It is to be borne in mind, too, that the facts offered to be proved, at the trial, by the plaintiff, so far as they are material to the decision of this case, must here be considered as proved. It results, then, that the defendant attempts to screen his intrusion upon the possession of the plaintiff, under the title of Bush, in order to do which he must first show the lease to Wm. Nason avoided by non-payment of rent, or some other breach of condition. This is not attempted to be done except by force of the judgment against John Nason.

It is obvious, that this judgment is in no sense conclusive upon the right of the plaintiff. A judgment which is not *in rem*, is never conclusive except upon the very matter in judgment, and between the very same parties or their privies, either in blood or estate. As to all others, the judgment may be impeached and contradicted, by collateral evidence. For

FRANKLIN,
January,
1840.

Nason
v.
Blaisdell.

as those who are not parties or privy to the judgment, could have no process to operate directly upon the judgment, if they could not attack the judgment collaterally, they would be remediless. This point was decided on the last circuit in Orleans county, in the case of *Atkinson* v. *Allyn.*

The *rationale* of the rule of the conclusiveness of judgments, is merely technical and arbitrary, and one of convenience only. There is not any more sacredness, absolutely, in the proceedings of a court of justice, than of many other tribunals, whose acts are always subject to be scrutinized and revised even. But, that there may be an *end of controversy,* this rule has been adopted. The same matter once litigated in a court of justice and definitively adjudicated, is forever put at rest, for the alleged reason, that, unless this was so, litigation would be endless. If, when a party had once litigated a point, or which is the same thing, had had an opportunity of litigating it, he might still renew the controversy at will, the present evils of litigation would be indefinately multiplied. And, hence, the universally acknowledged wisdom of the maxim. *Sit finis litium, interest reipublicæ.*

But, it needs no argument to show that this rule cannot, in justice, be applied to one who is neither a party to the judgment, nor had any opportunity of becoming a party. A judgment, rendered under such circumstances, is of no more force, as against strangers, than if the record had been forged. It would be surely vain labor, to show, in detail, the many manifest absurdities and wrongs, which would naturally flow from the opposite doctrine. If two persons, by getting up a formal judgment in a court of record, could bind all the world conclusively, as to all the facts upon which the judgment was predicated, it would be a mode of proof often resorted to, I fear. As the court below erred in the effect which they gave to the judgment in question, judgment is reversed and a new trial granted.