ELLA DUNNETT ET AL. *v.* CHARLES A. SHIELDS AND DAVID S.
CONANT.

November Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, and BUTLER, JJ., and FISH,
Supr. J.

Opinion filed February 26, 1924.

*Descent and Distribution—When Husband's Deed of Trust Not
Fraudulent As to Wife's Statutory Interest—Wife's Inter-
est in Husband's Property During Coverture Not Vested—
Right of Husband As to Alienation of His Property During
Coverture—Presumption in Support of a Decree—Evidence
—Fraud Not Presumed—Fraudulent Conveyances—One
Seeking to Set Conveyance Aside as Fraudulent Must
Prove Fraud Beyond A Reasonable Doubt—Trusts—Burden
of Proof in Action on Claim Against Trustees—Essentials
of Estoppel by Judgment—Right of One Who Has Con-
tracted to Pay Another's Debts to Attack Judgment Ob-
tained Against the Latter—When Allowance of Claim
Against Estate Not Conclusive.*

1. In an action by a widow to set aside her husband's trust deed
   as in fraud of her marital rights, when no express intent to
   defraud or bad faith in fact is found, and where the expressed
   purposes of such deed, which transferred and conveyed to cer-
   tain trustees the bulk of the husband's property, both real and
   personal, were: To relieve him from the care and management
   of his estate and to keep it intact during his life; to provide
   for the payment of his just debts and obligations at his decease;
   to provide for an assured income for his wife during her life;
   and after her decease to provide for the disposition of the rest
   and remainder of the trust estate to certain of his relations;
   and where the chancellor found that it was the husband's in-
   tention by such deed to secure an assured income for his wife
   during her life, even though it might require all the trust
   property to make provision for her—such deed cannot be
   said to be fraudulent as a matter of law.

2. The interest of the wife during coverture in the husband's property is not a vested interest, but is such as to give her an equitable right of action to protect her against any conveyance thereof, made by him with the fraudulent intent to deprive her of such rights therein, as, by statute, would accrue to her at his decease.

3. A husband has a free and unlimited right at will to alienate his personal property, and his real estate also, except his wife's homestead right therein, even though he thereby strips himself of all means of supporting and maintaining his wife, provided he does so *bona fide* and without intent to defraud her.

4. It will not be presumed, even in support of a decree, that the chancellor inferred a fact, which he expressly refused to find.

5. The law does not presume fraud, the presumption being always in favor of innocence and not guilt.

6. One who seeks to set aside a conveyance on the ground that it is fraudulent must establish that fact so clearly and conclusively as to put it beyond a reasonable doubt.

7. Where a husband conveyed the bulk of his property to trustees, the deed of trust directing that his trustees pay all his just debts after his decease, his widow, who by bill in chancery sought to recover from the trustees the amount of her claim against her husband's estate, which had been duly allowed by the commissioners of such estate, had the burden of proving her claim before the chancellor.

8. To constitute a judgment an estoppel, there must be an identity of parties as well as of the subject-matter, that is, the parties as between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action.

9. One who has contracted to pay all the debts of another may, when called upon to pay a judgment recovered against such promisee, attack the judgment on the ground of fraud, or deny the alleged indebtedness on which it was founded.

10. Where a creditor, after his debtor's death, seeks to have a conveyance by the debtor set aside as fraudulent, the allowance of his claim against the estate is not conclusive proof of the debt as to the grantee of the deed sought to be vacated.

11.  Where a husband conveyed the bulk of his property to trustees, the deed of trust directing that his trustees pay all his just debts, after his decease, in an action by his widow against the trustees to recover from them the amount of her claim against her husband's estate as allowed by the commissioners of such estate, not only was such allowance not conclusive against the trustees, but it did not even establish *prima facie* her right to recover against them.

APPEAL IN CHANCERY.  Bill to have a deed of trust to the defendants set aside as being in fraud of the rights of Ella Dunnett as widow, and of the creditors of the estate of her husband, Alexander Dunnett.  Heard on findings of fact, bill and answer, supplemental bill and answer, and cross bill and answer, after the June Term, 1922, Caledonia County, *Moulton*, Chancellor.  Decree for the plaintiffs.  The defendants appealed.  The opinion states the case.  *Reversed and remanded with directions.*

*John W. Redmond* and *Shields & Conant* for the defendants.

*Searles & Graves* and *Erwin M. Harvey* for the plaintiffs.

FISH, Supr. J.  The plaintiff, Ella Dunnett, is the widow of the late Alexander Dunnett.  The other plaintiff is Erwin M. Harvey, who joins in the bill as the administrator with the will annexed of the estate of Mr. Dunnett.  He is also solicitor for the plaintiffs.  The purpose of the suit is to have a deed of trust made by Mr. Dunnett to the defendants set aside as in fraud of the marital rights of Mrs. Dunnett and of the creditors of his estate.

When the bill was brought it was supposed by all parties concerned that Mr. Dunnett had died intestate, but a will was subsequently found which gave all his property to Mrs. Dunnett, except a gold watch and chain and the sum of one hundred dollars to be expended for a monument.  The will was subsequently allowed by the probate court, and the plaintiff Harvey, who had joined in the original bill as administrator, was thereupon appointed administrator with the will annexed.  The bill was amended to show the facts concerning the will and his appoint-

ment.  It further sets forth that Mrs. Dunnett is a creditor of the estate of Mr. Dunnett and that the commissioners of his estate have allowed her claim in part and that such allowance is a perfected judgment against his estate.  The defendants admit the allowance of the claim by the commissioners, but deny that it is a judgment as against them, and in their cross bill they ask the court of chancery to disallow said claim and to treat the matter as pending in that court.

The trust deed was executed May 20, 1920, and on the same day the trust was accepted in writing by the defendants.  It was executed and acknowledged by Mr. Dunnett with the formalities required in a deed of real estate.  He was suffering from an incurable disease at the time, and knew or had good reason to know his condition and that he could not expect long to live.

The trust deed was drawn mainly by the defendant Conant, who, with the defendant Shields and Mr. Dunnett, constituted the law firm of Dunnett, Shields and Conant at St. Johnsbury. But Mr. Dunnett shared in the drafting of the instrument and portions of it were in his hand.

The purpose of the trust deed, as set forth therein, is to relieve Mr. Dunnett from the cares and management of his estate and to keep it intact during his life for his own use; to provide for the payment of his just debts and obligations at his decease, and for an assured income to Mrs. Dunnett during her life, and after her decease to provide for the disposition of the rest and remainder of his estate to the beneficiaries therein named.

The trust deed conveys to the trustees all the property of Mr. Dunnett except his homestead place in St. Johnsbury and his personal property therein and a tenement house near by. The two pieces of real estate above referred to were held in the right of his wife.  The property conveyed consisted of real estate, stocks and bonds, and other personal property, including his law library in the office of Dunnett, Shields and Conant, and moneys due or to become due him from the firm or otherwise.

He directs the trustees to pay and turn over to him during his life all the income of his estate, including his share of the income of the law firm, and after his decease to pay all and singular his just debts and obligations, "using therefor such moneys and property belonging to my estate as in their judgment is best for that purpose, but if there are existing mortgages

upon any of my property, it is not intended that such mortgages be paid any faster than is consistent with furnishing my wife such ample support as is hereby intended and hereinafter provided. It is intended that the taxes on her property shall be paid so long as she retains the title to the same, and that the income from the rents of her real estate while she owns it, and the income from the proceeds thereof in case she sells it, shall be first used by her for her support.''

After his decease he directs the trustees to pay to his wife so much of the net income of his estate as may be suitable and proper for her ample and comfortable support, including necessary spending money during her life, both in sickness and health, and if the income is not sufficient to comfortably maintain and support her, with her own income, then the trustees are directed to use so much of the principal thereof as may be necessary to accomplish that purpose, it not being the intent that his wife shall at all shrink the principal of her property as long as there is sufficient in the trust to support her.

Provision is made for the sale of the trust property by the trustees after his decease and the necessary transfers of the same, and for the giving of mortgages thereon to raise funds for the purposes of the trust, and for the reinvestment of the trust funds in case of sale, as in their judgment may be best.

After the payment of all his just debts and obligations and after the decease of his wife and the payment by the trustees of all her funeral expenses, then he directs them to liquidate his estate and convert it into cash and pay the same to a brother and certain nephews and nieces.

He authorizes the trustees to act as his attorney for the purpose of voting at any stockholders meeting in any corporations in which he was a stockholder and to sell and transfer any stock owned by him therein.

He further provides for the purchase by the trustees of his law library and office furniture for the sum of three thousand dollars, and that the trustees shall hold the trust property during his life and that of his wife and for such further time as may be necessary to liquidate his estate.

Reservation is made of the right to revoke the trust, in whole or in part, during his life, and to declare the same null and void by a writing executed with the same formalities as the

trust deed, to be delivered to the trustees and recorded in the records of the various towns where the trust deed is recorded, provided the trust deed is recorded.

The deed was delivered to the trustees before but not recorded until after his death, which occurred September 14, 1920. The corporate stock was transferred to the trustees during his lifetime, and the office furniture and library were occupied by the three members of the firm the same after as before the execution of the trust deed.

The trust deed was without consideration as between the trustees and Mr. Dunnett. The latter was solvent at the time of its execution, and his net estate amounted approximately to twelve thousand dollars.

After the execution of the trust deed the rents and profits of his real estate, which consisted of improved property in Montpelier, Ryegate, and Groton, and an interest in a granite quarry in Hardwick, were collected by himself or by some one in his behalf, and used by him for his own purposes. He also paid small sums for repairs, and so far as his health allowed, attended to the supervision of the various pieces of real estate.

It is found by the chancellor that in executing the trust deed Mr. Dunnett did not intend to evade the payment of his just debts nor to defraud his creditors. It is further found that he intended to secure by the trust deed an assured income for his wife, during her life, even though it might require all the trust property, and to make provision for her. It is further found that it was intended that the property included in the trust deed should not become a part of his estate and as such subject to the exercise of the widow's rights. "Whether or not this is a fraud upon her, is, I conceive," says the chancellor, "a question of law." In answer to a request of the plaintiffs so to find the chancellor declines to find actual fraud and states that "all questions of the construction, operation and effect (of the trust deed) are considered to be questions of law and not of fact."

On the foregoing findings the chancellor by a decretal order declared the trust deed void as to Mrs. Dunnett to the extent of her statutory rights in the estate of Mr. Dunnett, ordered the trustees to pay over to her the sum of twenty-four hundred and eight dollars and thirty-seven cents in satisfaction of her claim as allowed by the commissioners of Mr. Dunnett's estate, and

directed the trustees to file within ten days an account and inventory of the trust estate for the purpose of determining the amount to be decreed to Mrs. Dunnett as her statutory interest therein had said instrument not existed, being four thousand dollars and one-half of the remainder of the net estate subject to distribution under Chapter 156 of the General Laws.

[1]   The first point made against the decree by the defendants is, that the chancellor erred in holding the trust deed to be in fraud of the statutory rights of Mrs. Dunnett.   This must turn upon a consideration of the question as to whether, when no express intent to defraud or bad faith is found in fact, such a conveyance as was made in this case can be said to be fraudulent in law.   Our cases bearing on this subject are *Thayer* v. *Thayer,* 14 Vt. 107, 39 A. D. 211; *Green* v. *Adams,* 59 Vt. 602, 10 Atl. 742, 59 A. R. 761; and *Nichols* v. *Nichols,* 61 Vt. 426, 18 Atl. 153.   In the first and third of these cases the conveyance was set aside because found to be in fraud of the statutory rights of married women.   In the Thayer Case the conveyance was made during the last sickness of the grantor and in expectation of death, in trust for his son and other children by a former marriage.   There had been trouble between the husband and wife and they had separated shortly before his death.   It was found that the conveyance in question "was made with the intent to defraud the oratrix of her dower in the lands, and of her share in the personal estate of her husband."   The case was ruled in favor of the plaintiff on the ground that actual fraud had been found.   The disposition of the case on this point follows: "The common law doctrine of dower in all the lands of which the husband was seized during coverture, was considered by this, and some of the other states, as an unreasonable and unnecessary clog upon the free alienation of estates, and, as the usual course is for the wife, upon an alienation, to join with the husband in the conveyance of little practical use.   If the husband is required to act in good faith, this change in the law does not essentially impair the rights of the wife for a support during widowhood. If, however, her claims to dower are to depend upon the caprice of the husband, and to be superseded by his conveyance, concocted and executed *mala fide,* and without consideration, our statutory provision might well receive our severest animadversion. * * * The conclusion, then, to which we come, is, that the

oratrix had, in the lifetime of her husband, such rights as should be recognized, protected and enforced; that the attempt to elude these rights, in the manner disclosed in this case, was *mala fide,* and a *fraud* upon the law and upon the marital rights of the oratrix, and that, as a consequence, the husband, so far as respects the widow, must be regarded, at the time of his death, as being the owner and having the *seizen* of the property in question.''

In the Nichols Case the husband had transferred his estate, real and personal, to his children by a former marriage and made no provision therein for his wife. Among other facts tending to show bad faith the master found that the husband ''made such conveyance in anticipation of his not living long, and that he had but a short time to stay, and with the intent to deprive his widow of any rights of property in and to the property so conveyed.''

These cases, upon which the plaintiffs confidently rely for an affirmance, emphasize rather the claim of the defendants that in order to defeat such a conveyance an *intent to defraud* must be found as a fact.

Relying upon the language of the Court in the Nichols Case, in which it is said that ''by the marriage Mrs. Nichols by law had a vested right to a certain extent in such property as her husband then had or might thereafterwards acquire during her coverture,'' the plaintiffs claim that the interest of Mrs. Dunnett in her husband's estate was a vested one, while on the part of the defendants it is argued that such an interest cannot be classified as vested by the usual definition of the term, but that the interest in question is *inchoate.* The term ''vested right'' is variously defined. Fearne in his work on Contingent Remainders refers to it as ''an immediate fixed right of present or future enjoyment.'' Chancellor Kent speaks of an estate as vested ''when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment.'' 4 Kent's Com. * 202. It is said by Mr. Justice Cooley that ''Rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest.'' Principles of Const. Law 320. See *Pearsall* v. *Great Northern Ry. Co.,* 161 U. S. 646, 673, 40 L. ed. 838, 16

Sup. Ct. 705; 12 C. J. 955. It is said by Mr. Justice Chase in *Calder* v. *Bull,* 3 Dall. (U. S.) 386, 1 L. ed. 648, speaking of vested rights; "When I say that a right is vested in a citizen, I mean, that he has the power to do certain actions; or to possess certain things, according to the law of the land. If anyone has a right to property, such right is a perfect and exclusive right; but no one can have such right before he has acquired a better right to property, than any other person in the world: A right, therefore, only to recover property cannot be called a perfect and exclusive right." See Myer on Vested Rights, 1-56.

[2, 3] The interest of the wife during coverture in the husband's property is not a vested interest. A statute enacted in 1797 gave the widow of a deceased person as dower the use during the term of her natural life of one-third of the real estate of which he died seized in his own right. R. 1797, p. 225, § 32. Thereafter the law imposed no restraint upon the husband in the exercise of his right to alienate all of his property, except the wife's homestead right therein, if done *bona fide* and with no design of defrauding her of her just claims upon him and his estate. See *Thayer* v. *Thayer, supra.* The use in the Nichols Case of the words "vested right" was unfortunate and inaccurate; but the context shows that the Court meant to say no more than that the wife, during the life of the husband, has such an interest in his property as the law recognizes and protects. This interest, correctly defined, is not a present estate in his property, but it gives her an equitable right of action to protect her against any conveyance thereof, made by him with the fraudulent intent to deprive her of such rights therein, as, by statute, would accrue to her at his decease. It is apparent that the chancellor was misled by the further statement in the opinion that the intent to defeat the marital rights of the widow by both the grantor and grantees in the deed there in question was "necessarily presumed from their knowledge that such rights would be defeated by the conveyance. Both are presumed to have intended the natural results of their acts." The holding as a matter of law that the trust deed was null and void as to Mrs. Dunnett and those claiming under her is sustainable only upon the theory that, since she would be entitled at her husband's death to an estate in fee in her statutory share of his property while the conveyance gave her only a life interest there-

in, a fraudulent intent to deprive her of her marital rights was necessarily to be presumed from the knowledge that such would be the effect of the conveyance. The language of the opinion quoted above supports the conclusion, but it is clearly erroneous. This would make the validity of the transfer depend upon an *implied* intent, while the true rule is that it is only an *actual* intent to defeat the wife's rights that vitiates it. *Feigley* v. *Feigley,* 7 Md. 537, 61 A. D. 375. If the rule were that a fraudulent intent to deprive a wife of her marital rights is necessarily presumed from knowledge of the effect of the conveyance by the husband of his property, his sole deed during coverture would be as a rope of sand. His widow would need only to show that her inheritance was affected by the conveyance to have it set aside. On its facts the Nichols Case was correctly decided on the authority of the Thayer Case, and that it was intended to be in harmony therewith appears from the statement in the opinion that the Thayer Case was "sufficient authority for the conclusion" reached therein. It was found in the former case that the instrument in question was made "with the intent to deprive the widow of any rights of property in and to the property so conveyed." This, with the other findings, was tantamount to a finding of bad faith and an intent to defraud her, and was enough to support the chancellor's decree. But the parts of the opinion herein criticised were outside the case, and, as we have seen, unsound in law, and should be disregarded. In the Green Case this Court correctly states the rule as to the right of the husband in this State to alienate his property without his wife joining in the conveyance thereof. It is this: "It is settled * * * that the law imposes no restraint upon the husband in the free and unlimited exercise of his right to alienate his personal property at will, and his real estate also, except his wife's homestead right therein, even though in the exercise of this right he strips himself of all means of supporting and maintaining his wife, provided he does so *bona fide,* and with no design of defrauding her of her just claims upon him and his estate, the *intent* in all such cases being the true test of the validity of the transaction. If it be done with a *fraudulent intent* as to the wife, the transaction is invalid, and she may assail the same under the statute. The *intended fraud* works the invalidity."

It is not enough in this case that the chancellor has found that Mr. Dunnett intended that such property as was included in the trust deed should not become a part of his estate and as such be subject to the exercise of the widow's statutory rights to bring it within the inhibition of the law. It does not need to be said that having made a conveyance of practically all his estate for the benefit of his wife, if her necessities should require it, that he intended that such property as was conveyed should not become a part of his estate to become subject to her statutory rights on his decease. He did not intend that any of his estate, except as previously stated, should become the subject of administration in the probate court, but rather that through the trustees everything should be done that was to be done in the final disposition of the bulk of his property. Nor does it need to be said that it is within the legal rights of the husband to make provision for his wife by a transfer of his property to trustees by which she is to be provided for after his death. Manifestly such a conveyance in her interest of all that she could claim under the law, could not be the subject of attack by her as in prejudice of her rights. Can it be said that anything short of this falls within the condemnation of the statute? or to state the question in terms of this case, can it be said that where provision is made "primarily for the benefit of the widow, who has the right thereunder, if necessary, to have the entire estate used for her support," to use the language of the chancellor, that the trust fails in the eyes of the law? We do not think so.

[4-6]  The facts relied upon by the plaintiffs relating to the trust deed and the management of the trust property during the lifetime of Mr. Dunnett do not as a matter of law make a case entitling them to the relief sought. They were before the chancellor for consideration, and he failed to find bad faith on Mr. Dunnett's part in making the conveyance, as a matter of fact. Nor can we presume that the chancellor inferred this fact, even in support of the decree, for he expressly refused to find it. *Fife* v. *Cate,* 84 Vt. 45, 77 Atl. 947. This concludes the question for the purposes of review. It is well to consider in this connection that the law in no case presumes fraud. One who seeks to set aside a conveyance on the ground that it is fraudulent must establish that fact so clearly and conclusively as to put it beyond a reasonable doubt. *Fuller* v. *Knapp,* 82 Vt. 166, 72 Atl. 688;

*Powers et al.* v. *Caledonia County Grammar School*, 93 Vt. 220, 106 Atl. 836; *Hitchcock* v. *Kennison*, 95 Vt. 327, 115 Atl. 156. The presumption is always in favor of innocence and not of guilt. In no doubtful matter does the court lean to the conclusion of fraud. *Darling, Admr.* v. *Ricker*, 68 Vt. 471, 35 Atl. 376; *Tillison* v. *Tillison*, 95 Vt. 535, 116 Atl. 117.

It is urged by the plaintiffs that to sustain the trust deed would be to allow the doing by deed what cannot be done by will; but this is nothing new. It is what usually happens when estates are settled by a person in his lifetime. Such harm as results to those whose interests may be unfavorably affected by the rule applicable to this class of cases is less than that which would result from a contrary holding in disquieting titles acquired under conveyances made by married men with no intent to defraud the wife, but resulting, as must have been known, in diminishing, or operating to prevent her taking, her statutory share in her deceased husband's estate.

The second point made by the defendants against the decree is based on the ground that the chancellor erred in ordering the trustees to pay Mrs. Dunnett the sum allowed by the commissioners of Mr. Dunnett's estate. After the appointment of the plaintiff Harvey as administrator he took into possession certain personal property of Mr. Dunnett's which was not included in the trust deed and to which the defendants make no claim. This amounted to practically thirteen hundred dollars. Commissioners were appointed and a large number of claims were allowed against the estate of Mr. Dunnett, including that of Mrs. Dunnett heretofore referred to. The trust deed directs the trustees "to pay all and singular my just debts." The trustees do not deny their liability to pay this claim if it shall be proved to be just, but they deny that it is a just claim. It is set up in the bill in behalf of Mrs. Dunnett, together with the items on which it is predicated, and it is alleged that the claim is a perfected judgment that is binding on the defendants, and it is asked that if the trust deed is found not to be null and void as to the creditors of Mr. Dunnett that the defendants may be ordered to pay to Mrs. Dunnett the sum allowed by the commissioners of Mr. Dunnett's estate as a valid and adjudicated claim. The defendants admit the allowance of the claim by the commissioners and that it is unpaid, but they deny that it is a valid and adjudicated

claim against the trust estate, and deny any liability on account of any of the items of which it is made up and ask the chancellor to disallow the claim. The chancellor ordered it to be paid on the theory that the liability of the defendants to pay the claim "is considered to be a question of law."

[7] The burden was clearly upon Mrs. Dunnett to prove her claim before the chancellor. As he ordered it paid without any hearing, it is to be assumed that he regarded the allowance by the commissioners of the claim as binding upon the trust estate, and it becomes necessary to inquire what the effect of the adjudication by the commissioners was in the case before the chancellor. Did it have any effect, either *prima facie* or otherwise?

[8] To constitute a judgment an estoppel, there must be an identity of parties as well as of the subject-matter; that is, it is necessary that the parties as between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action. 23 Cyc. 1237. Estoppels must be mutual, and therefore a party will not be concluded by a former judgment unless it would have been a protection to him had it been the other way; and conversely, no person can claim the benefit of a judgment as an estoppel upon his adversary unless he would have been prejudiced by a contrary decision of the case. 23 Cyc. 1238; *Wright* v. *Hazen*, 24 Vt. 143. The true rule is well stated in *Nason* v. *Blaisdell*, 12 Vt. 165, 36 A. D. 331: "A judgment which is not *in rem*, is never conclusive except upon the very matter in judgment, and between the very same parties, or their privies, either in blood or estate. As to all others, the judgment may be impeached and contradicted by collateral evidence. For as those who are not parties or privy to the judgment, could have no process to operate directly upon the judgment, if they could not attack the judgment collaterally, they would be remediless." The same rule in effect is laid down in *Atkinson* v. *Allen*, 12 Vt. 619, 36 A. D. 361.

[9] One who has contracted to pay all the debts of another may, when called upon to pay a judgment recovered against such promisee, attack the judgment on the ground of fraud, or deny the alleged indebtedness on which it was founded. *Ingals* v.

*Brooks,* 29 Vt. 398.  This case is strikingly in point.  Here a conveyance was made of all the real estate of the grantor, in consideration of which the grantees agreed to pay all his debts. Later, one of the creditors of the grantor sued him for a debt claimed to be due and owing him, and by the grantor's consent, but without the knowledge of. the grantee, obtained judgment and an execution which he levied upon a portion of the premises conveyed.  It was said in disposing of the case in favor of the defendant: "But it seems to us that the claim cannot fairly be treated as having any existence as to Clark Brooks (the grantee) or the property conveyed to him, and that the attempt to so treat it must be regarded as a legal fraud upon his rights under the conveyance.  The judgment being altogether *inter alios,* and in express violation of the understanding of Clark when he surrendered the claim against Leafy, one of the plaintiffs, and paid half the amount of the note in money, in agreed satisfaction of the whole, could have no effect upon the defendant Clark.  He is entitled to show that the note was paid before sued, or that the judgment was, for other reasons, fraudulent as to him.''

[10, 11]  Where a creditor, after his debtor's death, seeks to have a conveyance by the debtor set aside as fraudulent, the allowance of his claim against the estate is not conclusive proof of the debt as to the grantee of the deed sought to be vacated. *Sprague* v. *Waldo,* 38 Vt. 139.  This case is directly in point. In this case the orator administrator sought to have a conveyance from his intestate to his daughter set aside on the claim that it was executed to prevent the collection of a debt due from the intestate to his daughter's husband.  The bill alleged that if there was no actual intent to defraud, the deed being one of gift and not sufficient property having been retained by the grantor to satisfy the debt in question, it would be invalid as to the creditor.  The claim in question was duly allowed by the commissioners of the plaintiff's intestate, but while it was held that the allowance was conclusive on the estate, the claimant, creditors, and heirs, it was held not to be binding on the grantees under the deed in question.  The opinion on this part of the case is instructive: "But Mrs. Arnold (the daughter), or her heirs, who are now the parties really interested in her title under the conveyance from her father, are making no claim through the estate of Brooks (the father) of claiming any in-

terest in the estate.    They claim by a title wholly independent of any interest in that estate, and that this land was never any part of the Brooks estate or liable to be treated as such.    The heirs of Mrs. Arnold claim it as the heirs of her estate, ana not as the heirs of the estate of Brooks.    They are therefore strangers to the judgment by the commissioners between Arnold and the estate of Brooks.    They were not represented by the orator as Brooks' administrator, because they had no interest in Brooks' estate.''    It was, accordingly, held that the orator must establish by his evidence in the case on trial the existence of a debt by Arnold against Brooks in order to prevail.    In harmony with the foregoing cases are: *Heirs of Adams* v. *Adams*, 22 Vt. 50; *Church* v. *Chapin*, 35 Vt. 223; *Howe et ux.* v. *Chesley*, 56 Vt. 727.    From a consideration of the foregoing cases it is evident that the judgment of the commissioners was not conclusive on the defendants upon the question of their liability to Mrs. Dunnett as a creditor of Mr. Dunnett's estate.

But it is argued that the report of the commissioners established *prima facie* against the defendants the justness of Mrs. Dunnett's claim, and that its allowance by the chancellor was, therefore, warranted.    Attempts have sometimes been made to establish the position that a judgment is not conclusive, but only *prima facie* evidence of right, but this cannot be supported on principle as a general proposition, nor on authority.    Wells on Res Adjudicata and Stare Decisis, page 6.    In Peake on Evidence, at page 28, it is said as against third persons a verdict in a civil case is no evidence whatever; for the first principles of natural justice require that a man should be heard before his case is decided, and if he were to be bound, or in the least degree prejudiced by a verdict where he had no opportunity of cross-examining the witnesses, it would, in effect, be overturning this most salutary rule of jurisprudence.    The same rule in substance is laid down in 2 Taylor on Evidence, § 1682.    This Court recently had occasion to consider the effect of a verdict and judgment involving the same issue but affecting a different party in the case of *In Re O'Brien*, 95 Vt. 167, 113 Atl. 527, 14 A. L. R. 859, and it held that they were not competent evidence. In the instant case the judgment of the commissioners did not establish *prima facie* Mrs. Dunnett's claim against the defendants.

28

It is finally said by the plaintiffs that the defendants were in attendance before the commissioners while the claim of Mrs. Dunnett was being considered, and that they participated in the hearing thereon, and are, therefore, estopped from denying her claim. It is a sufficient answer to this argument that the findings leave nothing for consideration on this point here.

It follows from the foregoing discussion that the order of the chancellor' upon the defendants. to pay the claim of Mrs. Dunnett was without right. In view of the decision on the two points considered it becomes unnecessary to review the other questions in the case.

*Decree reversed, and cause remanded, with directions that the injunction be dissolved and a decree entered establishing the trust deed in question as good and sufficient in law and valid. Let a hearing be had on the said claim of the plaintiff Ella Dunnett as creditor and a decree entered thereon according as said claim may be established or disestablished, with costs to defendants.*