NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 102

No. 2018-021

| | |
|---|---|
| Patricia Hayes | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, Civil Division |
| | |
| Allison Hayes, Brian Hayes and LPL Financial, LLC | May Term, 2018 |

Helen M. Toor, J.

Michele B. Patton and James W. Swift of Langrock Sperry & Wool, LLP, Middlebury, for Plaintiff-Appellant.

Joan W. D. Donahue of Brennan Punderson & Donahue, PLLC, Middlebury, for Defendants-Appellees Allison Hayes and Brian Hayes.

PRESENT: Reiber, C.J., Skoglund, Robinson and Carroll, JJ., and Davenport, Supr. J. (Ret.), Specially Assigned

¶ 1. **CARROLL, J.** This case involves a dispute over a husband's designation of his niece and nephew, defendants Allison Hayes and Brian Hayes, as the beneficiaries of his Individual Retirement Account (IRA) rather than his wife, plaintiff Patricia Hayes. Husband is now deceased. Wife filed a declaratory judgment action, arguing that the beneficiary designation should be declared void under 14 V.S.A. § 321 and that the IRA funds should pass through husband's estate. The trial court granted summary judgment to defendants, concluding for several reasons that wife was not entitled to relief under § 321. We agree with the trial court that § 321

does not apply here because wife took under husband's will rather than electing her statutory share of his estate. We therefore affirm.

¶ 2. The following facts are undisputed. Husband and wife married in December 1973 and separated in 2006. In June 2016, husband filed for divorce. Husband died in September 2016. During his lifetime, husband had a deferred compensation retirement plan through his work. Wife was the beneficiary of this account. In June 2015, husband withdrew the money in this account (approximately $119,000) and rolled it into a traditional IRA managed by defendant LPL Financial, LLC. Husband designated his niece and nephew as co-primary beneficiaries. Husband was close to his niece and nephew, and they visited him regularly.

¶ 3. Husband died testate. His will, executed in December 2001, left the rest and residue of his estate to wife. The probate division allowed the will in October 2016, finding that it was properly executed and authenticated and that wife consented to its allowance. Wife inherited husband's personal estate valued at $95,000 (less a lien against a vehicle), as well as husband's probate estate. Wife also obtained sole possession of husband's primary residence, which the couple owned as tenants by the entirety at the time of husband's death.

¶ 4. In June 2017, wife filed this declaratory judgment action, arguing that husband's IRA beneficiary designation was void under 14 V.S.A. § 321. Defendants maintained that the statute did not apply, but even if it did, that the undisputed facts showed that husband did not violate it.

¶ 5. Section 321 was part of a much larger bill that both restated and revised existing law. See 2009, No. 55, § 5. Section 321 is entitled "Conveyance to defeat spouse's interest," and it provides:

> A voluntary transfer of any property by an individual during a marriage or civil union and not to take effect until after the individual's death, made without adequate consideration and for the primary purpose of defeating a surviving spouse in a claim to a share of the decedent's property so transferred, shall be void and

2

> inoperative to bar the claim. The decedent shall be deemed at the time of his or her death to be the owner and seised of an interest in such property sufficient for the purpose of assigning and setting out the surviving spouse's share.

The court concluded that § 321 was a modern articulation of a longstanding rule that a spouse cannot convey property to others to fraudulently deprive the surviving spouse of property to which he or she has a right, that is, commit "a fraud upon . . . [the surviving spouse's] marital rights." Thayer v. Thayer, 14 Vt. 107, 123 (1842) (emphasis omitted). The court emphasized that "an intent to defraud must be found as a fact" and that a fraudulent intent could not be "presumed from the knowledge that [a diminished estate] would be the effect of the conveyance." Dunnett v. Shields, 97 Vt. 419, 426, 428-29, 123 A. 626, 630-31 (1924) (emphasis omitted) (stating that "the law in no case presumes fraud," and "[o]ne who seeks to set aside a conveyance on the ground that it is fraudulent must establish that fact so clearly and conclusively as to put it beyond a reasonable doubt"), overruled on other grounds by Trepanier v. Getting Organized, Inc., 155 Vt. 259, 583 A.2d 583 (1990).

¶ 6. The court reasoned that wife relied solely upon the effect of the beneficiary designation, the exact reasoning rejected in Dunnett. The undisputed facts showed that husband was close to his niece and nephew and that he otherwise provided for wife. These facts, in the court's view, supported an inference that husband did not intend to disinherit wife but instead intended to lawfully provide for his niece and nephew. The court thus held that wife failed to establish an essential element of her case. See Burgess v. Lamoille Hous. P'ship, 2016 VT 31, ¶ 17, 201 Vt. 450, 145 A.3d 217 ("Summary judgment is mandated where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which the party has the burden of proof at trial." (quotation and alterations omitted)).

¶ 7.     The court further found that the reference to a surviving spouse's "share" in § 321 referred to a spouse's share under 14 V.S.A. § 311 when the decedent dies intestate or to a spouse's elective share under 14 V.S.A. § 319.  See 14 V.S.A. § 311 (describing intestate share of surviving spouse); id. § 319 (providing that spouse can "waive the provisions of the decedent's will and in lieu thereof elect to take one-half of the balance of the estate, after the payment of claims and expenses").  In this case, husband died testate and wife chose to take under husband's will.  It followed that wife was barred from seeking her elective share under § 319, and thus, § 321 did not apply.  See In re O'Rourke's Estate, 106 Vt. 327, 332, 175 A. 24, 26 (1934) ("It is a familiar rule that one cannot take under a will and against it.").  The court also concluded that wife failed to demonstrate, as a matter of law, that a beneficiary designation constituted a "voluntary transfer of any property" under § 321.  For all these reasons, the court granted summary judgment to defendants.

¶ 8.     On appeal, wife challenges each of the grounds offered by the court in support of its summary judgment decision.  We find it necessary to address only wife's challenge to the meaning of the term "share" in § 321.  Wife argues that this term is not limited to a spouse's elective or intestate share.  She maintains that a surviving spouse might have a claim to a share of an asset that "would have been distributed pursuant to the will, if not for the voided transfer, and the surviving spouse was a beneficiary under the will."  Wife suggests that a spouse might also have a claim to an asset if he or she had been a named beneficiary of an asset and the designation was then changed.  Even if the statute does refer to an intestate or elective share, wife argues that her share of the IRA should be determined under intestacy law because the IRA was a "part of a decedent's estate not effectively disposed of by will."  14 V.S.A. § 301(a) ("Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs, except as modified by the decedent's will.").

4

¶ 9.     "The interpretation of a statute is a question of law that we review de novo." State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129.  In interpreting 14 V.S.A. § 321, "[o]ur goal . . . is to effectuate the intent of the Legislature." Dep't of Taxes v. Montani, 2018 VT 21, ¶ 24, __ Vt. __, 184 A.3d 723 (quotation omitted).  "In looking at any particular statutory scheme, we look to the whole and every part of it, its subject matter, and its effect and consequences in determining intent." Id. (quotation omitted).   "If the language [of the statute] is clear, we apply the statute in accordance with its plain meaning." Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893.  As set forth below, we conclude that the term "share" in § 321 plainly refers to a surviving spouse's elective or intestate share.  This is consistent with the history of the law in this area, the statutory scheme, and the purpose of § 321.

¶ 10.    We begin with a brief review of the law in this area prior to 2009, mindful that much of this law "changed very little over time." S. Willbanks & J. Secrest, Changes to Vermont's Probate Law: Increasing the Surviving Spouse's Share and Other Measures, Vt. B.J., Summer 2009, at 26 ("More than two hundred years ago—in 1787 to be precise—Vermont enacted an intestacy statute as well as dower and curtesy provisions that have changed very little over time.").[1] Under prior law, a widow had the statutory right to "(1) Homestead; (2) statutory dower; [and] (3) one-third, at least, of [her husband's] personal property." O'Rourke's Estate, 106 Vt. at 333, 175 A. at 26.

¶ 11.    A widow's right to dower, historically defined in Vermont statutory law as the right to "one-third of the real estate of which her husband died seized," was long recognized as "a favorite of the law." Thayer, 14 Vt. at 108, 118 (quotations omitted) (explaining that dower right

---

[1] The term "dower," "[a]t common law," meant "a wife's right, upon her husband's death, to a life estate in one-third of the land that he owned in fee." Dower, Black's Law Dictionary (10th ed. 2014).  "Curtesy" was defined at common law as "a husband's right, upon his wife's death, to a life estate in the land that his wife owned during their marriage, assuming that a child was born alive to the couple." Curtesy, Black's Law Dictionary (10th ed. 2014).

was designed to ensure a wife's "subsistence . . . during her life," and was historically recognized as "a favorite of the law"). In Thayer, we also recognized a husband's right to alienate real property during his lifetime as long as he acted in good faith. We found that this approach prevented an "unreasonable and unnecessary clog upon the free alienation of estates" and it "[did] not essentially impair the rights of the wife for a support during widowhood." Id. at 119 (explaining that Vermont and other states considered "common law doctrine of dower in all the lands of which the husband was seized during coverture . . . as an unreasonable and unnecessary clog upon the free alienation of estates, and . . . of little practical use").[2] If a husband conveyed property with the intent to defeat his wife's dower right, the conveyance "would be fraudulent and void as against the widow, and as to her, the husband would die seized" of this property. Id. at 118.

¶ 12. A husband could also dispose of his personal property during his lifetime if done in good faith. See Dunnett, 97 Vt. at 429, 123 A. at 631; see also O'Rourke's Estate, 106 Vt. at 330, 175 A. at 25 (setting forth history of surviving spouse's right to share of personal estate of decedent). This too promoted "trade and commerce." See, e.g., Holzbeierlein v. Holzbeierlein, 91 F.2d 250, 253 (D.C. Cir. 1937) ("To hold that a wife has a vested interest in her husband's personal estate that he is unable to divest in his lifetime, would be disastrous to trade and commerce." (citing cases)). As summarized in Dunnett:

> It is settled that the law imposes no restraint upon the husband in the free and unlimited exercise of his right to alienate his personal property at will, and his real estate also, except his wife's homestead right therein, even though in the exercise of this right he strips himself of all means of supporting and maintaining his wife, provided he does so bona fide, and with no design of defrauding her of her just claims upon him and his estate, the intent in all such cases being the true test of the validity of the transaction. If it be done with a fraudulent intent as to the wife, the transaction is invalid, and

---

[2] The term "coverture" means "[t]he condition of being a married woman." Coverture, Black's Law Dictionary (10th ed. 2014).

> she may assail the same under the statute. The <u>intended fraud</u> works the invalidity.

97 Vt. at 428, 123 A. at 631 (quotation and alteration omitted); see also <u>O'Rourke's Estate</u>, 106 Vt. at 331, 175 A. at 25 ("The right of the wife to any part of the husband's personal property is inchoate as long as he lives, and may be defeated by him by sale or gift thereof made in good faith. But at his decease, her inchoate right immediately becomes vested and complete." (citation omitted)).

¶ 13.    In <u>Thayer</u>, the husband, "in expectation of soon dying," conveyed his entire estate, real and personal, to his son from a prior marriage in trust for the son and the husband's other children from the prior marriage. 14 Vt. at 107. There was no consideration for the conveyance beyond love and goodwill, and the husband, through a lease, "secured to himself the possession and use of all the property, so conveyed, during his life, upon a nominal annual rent for the real estate." <u>Id</u>. Under the trust agreement, in addition to the real property, the children would be entitled to distribution of whatever remained of the husband's personal property at the time of the husband's death. <u>Id</u>. at 122.

¶ 14.    The Court found that the conveyance was "made with the intent to defeat the [wife] of her dower in the lands, and her share of the personal estate, of her . . . husband." <u>Id</u>. at 107. The wife had a statutory right to at least one-third of her husband's personal estate after payment of debts, and "she cannot be deprived of [this right] by the will of her husband, nor by jointure, except at her election." <u>Id</u>. at 120.[3] "Though the [dower] right may be inchoate," the Court explained, "it should be protected against the <u>mala fide</u> acts of the husband."[4] <u>Id</u>. Ultimately, the

---

[3] "Jointure" means "[a] woman's freehold life estate in land, made in consideration of marriage in lieu of dower and to be enjoyed by her only after her husband's death; a settlement under which a wife receives such an estate." <u>Jointure</u>, Black's Law Dictionary (10th ed. 2014).

[4] The term "mala fide" means "in or with bad faith." <u>Mala fide</u>, Black's Law Dictionary (10th ed. 2014).

Court concluded that the wife had certain "rights as should be recognized, protected and enforced; that the attempt to elude these rights, in the manner disclosed in this case, was <u>mala fide</u>, and a <u>fraud</u> upon the law and upon the marital rights of the [wife], and that as a consequence, the husband, so far as respect the widow, must be regarded, at the time of this death, as being the owner and having <u>seizin</u> of the property in question." <u>Id</u>. at 123.

¶ 15.    In <u>Dunnett</u>, 97 Vt. at 427, 123 A. at 630-31, the Court again discussed the nature of a wife's right to property that her husband possessed or might acquire during coverture.  It reiterated that the wife's interest "during coverture in the husband's property is not a vested interest." <u>Id</u>. at 427, 123 A. at 630.  Instead, "the wife, during the life of the husband, has such an interest in his property as the law recognizes and protects"; it "is not a present estate in his property, but it gives her an equitable right of action to protect her against any conveyance thereof, made by him with the fraudulent intent to deprive her of such rights therein, as, by statute, would accrue to her at his decease." <u>Id</u>.  The Court also discussed the high threshold for establishing fraudulent intent as referenced above.  See <u>id</u>. at 428, 123 A. at 631 ("If the rule were that a fraudulent intent to deprive a wife of her marital rights is necessarily presumed from knowledge of the effect of the conveyance by the husband of his property, his sole deed during coverture would be as a rope of sand.").

¶ 16.    By 2008, the law continued to provide surviving spouses the right to elect against a will and claim their statutory share of the decedent's personal estate and real estate.  See 14 V.S.A. §§ 401, 402, 461, 465, 474 (2008), <u>repealed by</u> 2009, No. 55, § 4.  The prohibition against fraudulent real estate transfers was also codified at 14 V.S.A. § 473 (2008), which stated:

> A voluntary conveyance by husband of any of his real estate made during coverture and not to take effect until after his decease, and made with intent to defeat his widow in her claim to her share of his real estate, shall be void and inoperative to bar her claim to her share of such real estate.  The husband shall be deemed at the time of his death to be the owner and seised of such real estate for the purpose of assigning and setting out such share to his widow.

8

Under the case law set forth above, the prohibition against fraudulent transfers applied to transfers of personal property as well.

¶ 17.    Act 55, enacted in 2009, made various changes to existing law, including increasing a surviving spouse's elective and intestate shares.  See 2009, No. 55, § 5 (codified at 14 V.S.A. §§ 311, 319); see also Willbanks & Secrest, supra (discussing changes made by Act 55).  It also added § 321, which expanded the fraudulent-conveyance language referenced above to expressly include personal property and to explicitly encompass "individuals" who transfer property rather than merely "husbands."  See 2009, No. 55, § 5; see also Willbanks & Secrest, supra, at 28 (similarly concluding that § 321 "expands former section 473 of Title 14 to apply to all of decedent's property rather than just real estate"); see also S. Willbanks, Parting Is Such Sweet Sorrow, But Does It Have to Be So Complicated? Transmission of Property at Death in Vermont, 29 Vt. L. Rev. 895, 925-26 (2005) (discussing prior law, including gender-specific nature of 14 V.S.A. § 473 (2008) and noting various problems that could arise as a result of gender-specific provisions in then-existing law).

¶ 18.    Section 321 states:

> A voluntary transfer of any property by an individual during a marriage or civil union and not to take effect until after the individual's death, made without adequate consideration and for the primary purpose of defeating a surviving spouse in a claim to a share of the decedent's property so transferred, shall be void and inoperative to bar the claim.  The decedent shall be deemed at the time of his or her death to be the owner and seised of an interest in such property sufficient for the purpose of assigning and setting out the surviving spouse's share.

This provision is found within a subchapter addressing "Survivors' Rights and Allowances," which also sets forth the "Share of surviving spouse," id. § 311 (setting forth intestate share), and the provision concerning "Waiver of will by surviving spouse," id. § 319 (setting forth elective share).

9

¶ 19.    It is evident that the "share" to which a surviving spouse has a claim, referenced in § 321, is his or her statutory share.  This is consistent with the statutory scheme and the use of the term "share" both in our case law and prior statutory provisions.  See, e.g., Thayer, 14 Vt. at 120 (recognizing widow's statutory right to "at least, one-third of the personal estate, after the payment of debts, &c.," and referring to it as "[t]he widow's claims for her share"); In re Peck's Estate, 87 Vt. 194, 212, 88 A. 568, 576 (1913), superseded by statute on other grounds, as recognized by In re Cartwell's Estate, 120 Vt. 228, 230, 138 A.2d 588, 589 (1958) (explaining that husband was entitled to waive wife's will and claim "his statutory share of [wife]'s estate").  We find no support for wife's assertion that the term "share" might refer to an asset that "would" have been distributed under a will but for its transfer to someone else.  A beneficiary's interest under a will is not usually designated as a "share," in contrast to a surviving spouse's claims under the statute, which are.  Additionally, § 321 is part of the chapter addressing "Descent and Survivors' Rights," including intestate and elective shares; it is not found in the chapter addressing wills.

¶ 20.    We find it apparent that § 321, like its predecessor concerning real estate conveyances, straddles the competing goals that our law has recognized.  It promotes the free alienation of property, and it also serves to protect a surviving spouse.  Our law has long required that a spouse will receive a minimum share of a decedent's estate, and § 321 assures that the minimum protection required by the elective or intestate share is not defeated.  See Budde v. Pierce, 135 Vt. 152, 155, 375 A.2d 984, 986 (1977) ("It is a well established rule of law in Vermont that the statutory rights of a surviving spouse are predicated upon sound policy considerations and are to be afforded great weight and deference.").  The law is not designed to ensure that a spouse's expectations are satisfied.

¶ 21.    We note that to the extent that wife is claiming some type of contractual right to the IRA funds by virtue of having once been designated a beneficiary, that claim fails.  See Luszcz v. Lavoie, 787 So. 2d 245, 248 (Fla. Dist. Ct. App. 2001) (en banc) (stating that until IRA owner's

10

death, "beneficiary merely has an expectancy in the IRA because until the owner's death, the owner can do with the IRA as desired, including changing the beneficiary designation or cashing out the account altogether"). Additionally, wife offers no persuasive support for her assertion that because husband's IRA was not distributed in his will, he died "intestate" with respect to the IRA. Cf. id. (describing IRA as "a contract with an institution that involves a third-party beneficiary designation," and "[u]pon the IRA owner's death, . . . the beneficiary's expectancy becomes an interest that attaches to the proceeds of the IRA, and those proceeds pass directly to the beneficiary; they do not pass through the estate"); In re Estate of Wellshear, 2006 OK CIV APP 90, ¶ 21, 142 P.3d 994, 998 ("We believe federal law intends for a custodian/administrator to rely on the disposition scheme recognized by federal law, including beneficiary designations, in effecting a disposition of an IRA upon the death of the owner."). Because wife is arguing that she has the right to certain property that should have been included in husband's estate, she needed to pursue this argument by waiving husband's will and claiming her elective share of husband's estate under § 319. If wife succeeded in this argument, she would be entitled to, at most, half of the IRA funds, not the full amount she would recover as residuary beneficiary of husband's will. See generally M. Begleiter, Grim Fairy Tales: Studies of Wicked Stepmothers, Poisoned Apples, and the Elective Share, 78 Alb. L. Rev. 521, 523 (2015) (explaining that "courts have for many years decided whether particular nonprobate transfers should be subject to the elective share statute under the heading of 'fraud on the spousal share,' " and discussing and evaluating such cases).

¶ 22. Because wife took under husband's will, however, she is now barred from seeking her statutory share. As noted above, "[i]t is a familiar rule that one cannot take under a will and against it. One who accepts a bequest does so on condition of conforming to the will. No one is allowed to disappoint a will under which he accepts a benefit." O'Rourke's Estate, 106 Vt. at 332, 175 A. at 26; see also In re Sharon's Estate, 121 Vt. 322, 324, 157 A.2d 475, 476 (1960) (stating that surviving spouse has no right to statutory share "in a testate estate unless such surviving spouse

11

waives the provisions made for him or her in the will of the decedent"). As one court has explained, "[e]lection . . . means a choice between two courses of action; acquiescence by the widow in her husband's disposition of his property, or disregard of it and assertion of the rights the law gives her. There is no third or mixed course." In re Cunningham's Estate, 20 A. 714, 715 (Penn. 1890) (internal quotation marks omitted). Wife acquiesced in the provisions of husband's will and, thus, § 321 does not apply. Summary judgment was therefore properly granted to defendants.

Affirmed.

FOR THE COURT:

_____

Associate Justice